ALEXANDER M. HUGO, APPELLANT, V. WILLIAM M. ERICKSON, APPELLEE.

FILED JULY 9, 1923. No. 22391.

**Vendor and Purchaser:** CONTRACT: REFORMATION. Where the owner of a city lot, on which is situated a house designated in the business directories of the city under a certain number, exhibits the property to a prospective purchaser in such a way as to leave in the mind of the latter the firm conviction that the entire lot is offered to him to purchase, and the parties enter into a memorandum agreement wherein the property is designated by the number it bears in the directories, and a payment is made on the purchase price by the purchaser and accepted by the seller, a court of equity will reform a more formal contract subsequently signed by the parties wherein only a portion of the lot is covered by the contract, when it appears that the purchaser signed the formal contract believing that it covered the entire tract shown him by the seller, and that he

would not have entered into the contract except for the deception practiced by the seller.

APPEAL from the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Reversed, with directions.*

*Bigelow, Peterson & La Violette,* for appellant.

*Will H. Thompson* and *L. R. Slonecker, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., BUTTON, District Judge.

MORRISSEY, C. J.

This is an action in equity to reform a contract. From a decree denying the relief prayed, plaintiff has appealed.

Defendant was the owner of two adjoining lots, numbered 21 and 22, each 50 feet wide and 130 feet long, in the city of Omaha. Lot 21, which is involved in this suit, was known as 4005 Charles street, and lot 22 was known as 4001 Charles street. Lot 21 had a frontage of 50 feet on Charles street, and lot 22 had a frontage of 50 feet on Charles street and 130 feet on Lowe avenue. The lots fronted the north. An alley extended the full length of the block running from east to west and the lots extended from Charles street to the alley. There was a house on each lot.

May 17, 1920, defendant listed for sale with a real estate firm the property designated as 4005 Charles street, at the price of $4,500. On the "listing form" the dimensions of the lot were given as 50 feet by 90 feet. The lot is also shown to abut upon an alley. Much other detail was set out which is not of consequence here. The property was immediately advertised for sale by the real estate firm.

Plaintiff was on intimate terms with a family named Crozier, and a tentative agreement had been reached between plaintiff and Mr. and Mrs. Crozier that plaintiff should purchase a residence, Mr. and Mrs. Crozier occupy it, and plaintiff makes his home with them. Mrs. Crozier telephoned to the real estate firm for information in regard to the property. She was advised to call upon

defendant, who lived at 4001 Charles street, and was assured that he would show the property. Following this direction plaintiff, together with Mr. and Mrs. Crozier, went to defendant's home, where they found him eating his evening meal. He directed them to go to the house at 4005 Charles street, saying that the tenant would permit its inspection. They immediately did as directed. When their inspection of the interior of the house was completed they were joined by defendant, who accompanied them on an inspection of the lot.

There is but slight conflict in the testimony as to where they went and as to the conversation that occurred. Plaintiff and Mr. Crozier walked to the rear of the lot. According to the testimony of Mrs. Crozier, she and defendant walked to an apple tree which is located 32 feet north of the alley. According to the testimony of defendant, they stopped a few feet north of this tree and approximately 16 feet south of the house. Some discussion was had as to trees growing upon the lot and as to a tree growing on the line between lot 21 and lot 22. Plaintiff and his witnesses testified that in the presence and hearing of defendant they discussed the erection of a garage on the end of the lot abutting upon the alley and the necessity for opening a gate to permit ingress and egress. Defendant denies that he heard any discussion relative to a garage or a gate. Mrs. Crozier testifies, also, that, inasmuch as she was to make the place her home, she was greatly interested in the lot, and that in her conversation with defendant she commented upon its ample size. Plaintiff and Mr. and Mrs. Crozier expressed their approval of the premises, and the defendant informed them that the contract of purchase and sale must be made with the real estate firm. Plaintiff went to the office of the real estate firm and signed a memorandum agreement whereby he agreed to purchase at the price fixed by the owner in the listing contract the "property known as 4005, Charles street, Omaha, Nebraska." Ten dollars was paid on the

purchase price, and it was agreed that $190 should be paid the following day, and $800 more was to be paid within five days, if the abstract of title was found to show a merchantable title in the owner; and provisos were inserted covering the balance of the purchase price. Plaintiff made the payment of the amount falling due the following day, and in due season there was delivered to him an abstract of title which upon its caption page in bold lettering purported to show an abstract to "Lot 21, block 3, size of lot 50 ft. x 130 ft." Underneath this caption is a plat of 18 blocks for Orchard Hill addition to Omaha. This plat shows lot 21, block 3, to be 50 feet wide and 130 feet long and extending from Charles street to the alley, and the entire lot is shown in red; all other lots and parts of lots being in white. The cover of the abstract, however, contains the caption "Abstract of Title to North 85 feet of Lot 21, Block 3, Orchard Hill." It consists of 25 pages, some of which are written in longhand on both sides of the paper; some are in typewriting.

This abstract, however, does not cover all of lot 21 as shown by the caption page, but covers only the north 85 feet of the lot. Plaintiff, without noticing the description on the cover of the abstract, and believing that it covered all the ground he had inspected, sent the same to his attorney for examination. June 2 the attorney returned the abstract to plaintiff, pointing out certain defects in, or clouds upon the title, and these matters were satisfactorily arranged by the real estate agents. In addition to the contract heretofore mentioned, there is also found in the record a paper marked exhibit 5, which is long and intricate, bearing date May 26, 1920, and in this the property is described as the north 85 feet of lot 21, in block 3. Another paper marked exhibit 6, and designated "Agreement," appears to be a contract between the same parties for the purchase and sale of this property, and therein it is likewise described as the north 85 feet of lot 21, and block 3. There is some dis-

pute as to the dates when these papers were signed, but the dates are not material. It is the contention of plaintiff that the contract signed May 20, when the first payment was made, is the real contract between the parties, and that the court should so hold and direct the conveyance of the entire lot to plaintiff, or if the subsequent papers signed, or either of them, is held to be the contract between the parties, that it should be so reformed as to include all of lot 21.

Plaintiff went into possession of the premises about July 1, 1920, believing that he was the owner of the entire lot. His tenants, Mr. and Mrs. Crozier, soon thereafter, in conversations had with neighbors, learned that defendant claimed the title to the south 45 feet. Plaintiff at once took steps to assert his right to all the property, and this suit followed. To our minds the conduct of defendant as shown by his own evidence should control the finding. He nowhere contradicts or questions the testimony of plaintiff and his two witnesses, except only on the immaterial matter as to the exact point where he stood while showing the lot. According to the testimony for plaintiff, defendant went upon the 45-foot tract that is in dispute, and stood under an apple tree growing thereon while plaintiff and his friends were inspecting the premises. According to defendant's testimony he walked to a point which, if this decree is upheld, is approximately the dividing line between the property sold and the property retained. He was asked if his stopping at this point had "anything to do with the fact that you were only seeking to sell 85 or 90 feet?" He answered: "I don't think so." When pressed as to whether he mentioned to these parties that he was selling less than the whole lot, he replied: "I didn't need to say anything." To the question, "And when they went back to the alley you suggested nothing as to how far the lot ran back?" he answered: "Didn't say anything about it." Further on in his examination he gave the following testimony: "Q. Did you remember at the time

that you were showing this property that you had listed 50 by 90 feet? A. Yes; I knew I had. Q. Why didn't you tell them that when they were in the back yard? A. Well, I don't know why I didn't, because I decided afterwards I had made a mistake on it. Q. When was that? A. I decided afterwards that I had made a mistake on that 90 feet, I had fixed out the boundaries over there so they would run right through and make a jog of 5 feet. Q. Well, assuming that you would only show 85, as you did in the contract, finally, why didn't you tell them in the back yard about that, when they were talking back in the yard? A. I don't know why I didn't."

Defendant saw plaintiff make the inspection of the entire lot; knew he was contracting with reference to the whole and not for a part only. Defendant stood mute when it was his duty to speak the truth, and thus he perpetrated a fraud against which a court of equity will grant relief.

It is not material which one of the papers signed is held to be the real contract. The whole transaction is before the court. The conclusion is irresistible that plaintiff by the conduct of defendant was led to believe, and did believe, that the papers and contracts signed called for the entire plot of ground shown him by defendant, and he is entitled to his bargain.

The judgment of the district court is reversed and the cause remanded, with directions to the district court to enter a decree reforming the contract as prayed in the plaintiff's petition.

REVERSED.