WESTHAVEN PROPERTIES, INC., A NEBRASKA CORPORATION, APPELLEE, v. JURGEN C. PAHL, APPELLANT.

160 N. W. 2d 168

Filed July 5, 1968. No. 36793.

Viren, Emmert & Epstein and Joseph L. Leahy, Jr., for appellant.

Lane, Baird, Pedersen & Haggart, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

A contract for a deed between defendant seller and plaintiff's assignor ambiguously described the land. In performing the contract defendant delivered a warranty deed to his tract and also to .61 acre that he did not own. In this suit he sought reformation of the deed for mistake. Plaintiff claimed damages for breach of covenants for title to the .61 acre. After a trial judgment went for plaintiff on both claims, and defendant has appealed. He contends that on de novo review we should (1) reform the deed and (2) find for him on the issue of damages.

Defendant owned a tract of land lying north of Spring Branch Creek in the east half of the northeast quarter of Section 34, Township 15 North, Range 12 East of the 6th P. M., Douglas County, Nebraska. The .61 acre in question lay north of Papio Creek and immediately south of defendant's tract and Spring Branch Creek.

On March 26, 1963, defendant received a written offer from plaintiff's assignor to purchase "40.5 acres * * * lying north of Papio Creek * * *." He did not accept. On the same day he and his wife made a counteroffer to sell: "That part * * * devised to * * * (him) in the * * * Will * * * of Hans Pahl, deceased, containing 40.5 acres, more or less, which * * * is not represented or warranted * * * to be accurate, except that Sellers warrant that it contains no less than 35 acres and contains all property owned by Sellers in said NE¼ * * *." The devise, which does not appear in the agreement, reads:

"* * * that portion * * * described as the South * * * 42 acres North of the creek, being approximately 40.5 acres * * *." Plaintiff's assignor accepted the counter-offer which was unlike the offer in description, price, and other respects.

A certificate to defendant's abstract of title on April 2, 1963, described land "lying North of Creek." Papio Creek, but not Spring Branch Creek, then appeared on plats in the abstract. An entry of a warranty deed dated in 1870 contained the phrases "a spring branch; * * * its intersection with the big Papillion Creek"; and "being the Southerly portion of the East half of the North East quarter * * *." The abstractor had noted, "Shown for reference only." The description included the .61 acre, but the abstract on April 2, 1963, traced no chain of title to the grantee of the 1870 deed. The abstract in that condition was submitted to buyer's counsel, John W. Delehant, Jr., for examination.

On April 9, 1963, Delehant wrote an opinion of title to land "lying North of Papio Creek." Noting ambiguity in the Pahl devise, he suggested that residuary bene-ficiaries under the will execute quit claims. Upon in-quiry by defendant's counsel, Einar Viren, Delehant furnished a land description for use in preparation of the quit claims. It designated a tract "lying north of Papio Creek." The warranty deed in question was drafted in identical language by Viren, who had been counsel in the probate of the Pahl will in 1956. The deed included the .61 acre.

The transaction was closed on May 1, 1963. Several days later, Delehant learned that the Y.W.C.A. was claiming record title to the .61 acre. On May 8 he noti-fied Viren of the claim. Defendant took no action, and in September 1964, plaintiff brought a quiet title suit against the Y.W.C.A., the Pahls, and others. In Novem-ber, Viren, as counsel for the present defendant, filed an answer that alleged title by the devise and adverse possession until the conveyance to plaintiff. In Sep-

tember 1965, immediately prior to trial of the quiet title suit, defendant superseded the allegations with an amended answer. The court quieted the title of the Y.W.C.A. to the .61 acre against the claims of the present parties.

The tract described in the warranty deed was surveyed in August 1963, months after the closing. The acreage was 36.48. Without the .61 acre the area, 35.87 acres, exceeded the minimum 35 acres called for in the contract. The parties had negotiated without locating important boundaries on the ground. The "reference" deed of 1870 in the abstract was insufficient for a careful title examiner to doubt marketability. The phrase "North of the creek" was ambiguous. By subsequent conduct the parties reasonably interpreted the agreement to include the .61 acre. The evidence fails to persuade us that either party had superior knowledge at the closing.

In his argument for reformation defendant states that plaintiff acquired more land than the 35 acres it bargained for. The statement is correct in a sense, but it does not explain away a further agreement by delivery of the deed. The original agreement was ambiguous in distributing risks of title. Defendant assumed the risk of title only to 35 acres and that with undescribed boundaries. He has requested reformation of the deed to convey 35.87 acres with covenants for title to the whole. He has been willing to take the risk of title to 35.87 acres instead of 36.48 acres. The evidence is neither clear nor convincing that the parties intended to exclude the .61 acre or any other definite part of the sale tract from the covenants. Even if defendant mistakenly assumed the risk, no reference point exists for correction. Equity insists "that the parties shall have come to a complete mutual understanding of all the essential terms of their bargain, for, otherwise, there would be no standard by which the writing could be reformed." 5 Williston on Contracts (Rev. Ed.), § 1548, p. 4339.

See, also, Slobodisky v. Phenix Ins. Co., 52 Neb. 395, 72 N. W. 483. In order to warrant reformation of a written instrument for mistake, the evidence must be clear and convincing. Koepplin v. Pfeister Hybrid Co., 179 Neb. 423, 138 N. W. 2d 637. We are not persuaded that the deed to plaintiff should be reformed.

The decree awarded damages of $15,150 with interest from May 1, 1963, for the .61 acre to which title failed. The only expert witness to testify on the subject of value was William L. Otis, a qualified real estate appraiser. Having inspected the 36.48 acres, he accepted the sale price of $145,000 as the fair market value. The .61 acre had a frontage on Eighty-fourth Street of 250 feet or approximately 24 percent of the total frontage of the 36.48 acres. It was zoned first commercial. The Y.W.C.A. had sold it together with a disconnected parcel of 3 acres to the rear for $15,150. The latter parcel was worth little because it had no street frontage. Otis estimated the fair market value of the .61 acre at $22,500.

The measure of damages for breach of covenants for title to part of a tract is (1) reasonable expenses and (2) such proportion of the consideration as the value of the part lost bears to the total value of the tract. Cf. Campbell v. Gallentine, 115 Neb. 789, 215 N. W. 111, 61 A. L. R. 1; Pauley v. Knouse, 109 Neb. 716, 192 N. W. 195. See, also, McGinley v. Martin, 275 F. 267; Holcomb v. McClure, 211 Miss. 849, 52 So. 922; 5 Williston on Contracts (Rev. Ed.), § 1402, p. 3909; Rawle on Covenants for Title (5th Ed.), § 187, p. 265. Plaintiff is entitled to recover the damages awarded by the district court.

Assignments of error relating to other parts of the judgment are not well taken. The judgment is affirmed.

AFFIRMED.