ROLAND F. WAITE, APPELLEE, V. RON SALESTROM ET AL.,
APPELLANTS, IMPLEADED WITH OZARK SKYRISE,
LTD., APPELLEE.

266 N. W. 2d 908

Filed June 21, 1978.   No. 41549.

David J. Lanphier and McGill, Koley, Parsonage & Ryan, for appellants Salestrom.

Abrahams, Kaslow & Cassman, for appellee Waite.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

This action was begun in the District Court by Roland F. Waite, appellee here, for reformation of and recovery of a money judgment upon a promissory note of which he was the holder and payee, and of which the defendants, Ron Salestrom, Philip Gardner, and their spouses were the makers. The purpose of the reformation was to strike from the note the following words: "without recourse except to the property covered by the T.D. Signed as General Partners for Ozark Skyrise, Ltd." The defendants defaulted and the court granted the requested reformation and rendered a money judgment for the principal amount of the note in the sum of $100,000, plus accumulated interest. The default judgment against Gardner and spouse was, on a motion, set aside and, after trial upon an amended petition naming only the Gardners as parties defendant, the court entered judgment granting the same relief as in the judgment which had been set aside.

The Gardners appeal to this court and make and argue various assignments of error which we summarize as follows: (1) Reformation should be denied because the plaintiff was guilty of overreaching in the antecedent real estate transaction for which the note was given. (2) The note was not subject to reformation because there was no mutual mistake and no antecedent contract between the parties to the note on which the minds of the parties had met and therefore no contract to be rectified. (3) The evidence is insufficient to support the judgment of reformation.

The defendants Salestrom did not at any time move to set aside the default judgment as to them, but did, after the trial of the cause against the Gardners and on the same day on which the Gardners

filed their motion for new trial, file a motion for judgment notwithstanding the verdict. Their motion was overruled and they filed notice of appeal. As to this appeal, Waite has filed a motion to dismiss because the judgment against Salestrom had become final and the notice of appeal was untimely, therefore this court has no jurisdiction. We reserved ruling on that motion pending oral arguments in this court. Salestroms here contend that the setting aside of the default judgment against Gardners ipso facto resulted in setting aside the judgment against them and they further contend that the contentions made by Gardners are good defenses as to the judgment against them.

It is necessary to state some background facts. About September 1974, the plaintiff, who was the owner of 23 acres of land near the Lake of the Ozarks in the State of Missouri, granted, for the sum of $5,000, to the defendant Salestrom, an option for a period of 67 days from September 25, 1974, to purchase the 23 acres for the sum of $300,000 payable: $5,000 by application of the option payment; $45,000 December 16, 1974; $100,000 March 1, 1975; and $150,000 January 2, 1976. In order to finance the purchase of the property and its proposed development as a condominium hotel with recreational facilities, Salestrom and Gardner formed a limited partnership under the laws of Nebraska known as Ozark Skyrise, Ltd., in which the two were the only general partners. Salestrom and Gardner exercised the option and made the December 16th payment of $45,000, took title in their individual names as joint tenants and executed and delivered to Waite a promissory note for the balance owing of $250,000 payable as provided in the option agreement, and secured the note by a first deed of trust to Waite. The note was executed by each as "Trustee and Individually."

The option agreement provided that Waite would

"subordinate land to lender when 50% of price is paid, plus $45,000."

The $100,000 installment came due and was unpaid. Salestrom and Gardner arranged to borrow the sum of $150,000 from Paul Myers and Henry Robertson. Waite, by letter to the latter parties, agreed to subordinate the remaining $100,000 balance to the lien of these proposed lenders.

The necessary instruments were prepared to accomplish the transaction in a somewhat different manner than the option and the letter contemplated. Instead of a subordination agreement, it was agreed that Waite would release his first deed of trust; that Salestrom and Gardner would execute to Myers and Robertson a first deed of trust, together with a note for $150,000. The proceeds of this loan would be paid to Waite. Gardner and Salestrom would execute a second deed of trust to Waite, together with a new note for $100,000 evidencing the balance owing him.

The instruments to accomplish the above purposes were prepared by a firm of attorneys in Missouri who considered that they were representing all parties. The proposed note to Waite from Salestrom and Gardner was in a usual form and contained no unusual provisions and indicated that it was secured by "D/T on lands in 16-39-16." A copy of this note was, previous to its execution, examined by Waite's Omaha attorney and approved. Salestrom then took the original of the instruments, including the notes in which Myers and Robertson were payees, the related deed of trust, and the note to Waite with the related second deed of trust, to California to cause them to be executed by Gardner and his spouse. Before the Gardners executed the note, they, on the advice of a California lawyer, caused to be typed in the lower left hand of the Waite note the words, "without recourse except to the property covered by the T.D." Gardner understood that by so doing he was relieving himself of any personal liability. Sales-

trom and his spouse executed the note after the change was made. Gardner acknowledges that he did not notify Waite of the change. He contemplated that if the change was not satisfactory, Waite would see it and object and then the matter could be resolved. There is a direct conflict in the testimony as to whether Salestrom informed Waite of the modification.

In any event, on a day in May of 1975, Salestrom took the instruments to the office of the attorney in Camdenton, Missouri. The attorney, Waite, Salestrom, and a real estate broker, who was not an interested party, were present. There Waite executed a release of the first deed of trust and received payment of $150,000. Details of evidence relative to the closing will be discussed later when we consider the second and third assignments of error.

Gardners first contend that reformation, being a discretionary remedy, should be denied because the sale by Waite to Salestrom and Gardner was tainted by overreaching in that Waite paid only $60,000 for the property in 1971 and represented that he had paid $220,000 for it. The price paid by Waite is not disputed. The court found that there was no overreaching by Waite in the sale or the subsequent financing. That finding is clearly supported by the evidence. Gardner and Salestrom were experienced dealers in real estate. They had adequate opportunity to and did examine and investigate the land before the option was exercised. Whether Waite misrepresented the sales price to a third party who was arranging the loan from Myers and Robertson is a subject of sharp dispute. In any event, this occurred long after the sales. It is not contended that he made any representation directly to Gardner and Salestrom. They made no complaint of this kind until after suit was filed. The evidence indicates that the price paid by Salestrom and Gardner was appropriate and reasonable for the type of development

they proposed, namely, a six to seven million dollar Sheraton condominium hotel. The evidence indicates that a primary reason for failure of the project was the miscalculations made by Salestrom and Gardner on the feasibility of the sewage disposal facilities which they contemplated.

While this court tries equity cases de novo, when evidence on a material question of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448. The evidence supports the finding of the District Judge that there was no overreaching in the sale by Waite to Salestrom and Gardner.

We now turn to the question of whether there was an antecedent agreement to which reformation of the note should be made to conform. Equity will decree reformation of a contract for a mistake only if the mistake is mutual. Lortscher v. Winchell, *supra*. The right of reformation presupposes that the instrument does not express the true intent of the parties and the purpose of reformation is to make an erroneous instrument express the real agreement. If the parties have not come to a complete mutual understanding of all the essential terms of the bargain, there is no standard to which the writing can be conformed. Westhaven Properties, Inc. v. Pahl, 183 Neb. 355, 160 N. W. 2d 168. Equity may also grant reformation to conform to the antecedent agreement of the parties where there is mistake on one side and fraud or inequitable conduct on the other. Neary v. General American Life Ins. Co., 140 Neb. 756, 1 N. W. 2d 908; Shurtleff v. Albert Pick & Co., 103 Neb. 414, 172 N. W. 46; Hugo v. Erickson, 110 Neb. 602, 194 N. W. 723. To warrant reformation of a written instrument, the evidence must be clear, con-

vincing, and satisfactory. A mere preponderance of the evidence is not sufficient. Westhaven Properties, Inc. v. Pahl, *supra;* Neary v. General American Life Ins. Co., *supra;* Lortscher v. Winchell, *supra.*

We now examine the evidence in the light of these principles. Gardner was personally liable on the original note. Of this there is no doubt, despite his claim that he understood under California law he was not personally liable on a purchase money mortgage. The original contract contemplated subordination of the trust deed of Waite to a new lender when $195,000 of the purchase price had been paid. The effect of that event would be that Gardner would still remain personally liable. In that case, only Waite's security would take a second position. While the agreement was later modified as to form, i.e., new notes and new trust deeds with changed positions would be given, its substance and effect was still the same as originally contemplated. Gardner does not assert that he ever had any agreement with Waite that he would be released from personal liability. He recognized otherwise for he testified: "I felt that when Waite saw the note he would contact me." It is not without significance that Gardner and Salestrom were not in a position to demand any changes in the original agreement. They were in default. They needed the Myers and Robertson money if they were to maintain their equity and have any chance of developing the property.

The remaining questions are, does the evidence satisfactorily show that there was a mistake on Waite's part, and inequitable conduct on the part of Gardner? We take these questions in order.

Waite testified that he attended the closing in Camdenton, Missouri, only to sign the deed of release of the first trust deed and that he did this because he was going to be in the area anyway. The new note (a copy of the original as first drafted) had

been examined and approved by his Omaha attorney. He had no reason to believe any change would be made before it was executed by the promissors. He testified that at the closing he did not examine the note or deed of trust. Waite saw and signed only the deed of release. The attorney who earlier prepared the instrument testified that he examined the various instruments to be sure they were signed and that the notarizations were properly completed. He did not note the change in the note made by Gardner, nor call it to Waite's attention. These were examined by and left with the attorney for recording. He later caused the Waite trust deed to be recorded and the original note to be stamped for identification as required by Missouri law. These instruments were later mailed to Waite and he placed them in his safe deposit box. When Salestrom and Gardner failed to make the $100,000 payment when due, Waite removed the instruments from safekeeping and then for the first time noticed the change. This action was then begun.

Salestrom, in his testimony, implied that he showed the changed note to Waite at some uncertain time and place before closing. This was denied by Waite. Salestrom's testimony is vague and lacking in credibility. His testimony was impeached by prior contradictory statements. He admits that he probably did not want to tell the Missouri attorney about the alteration in the note. He does not claim that there was any agreement for release from personal liability. It is worthy of mentioning that the executed copies of the note which were attached to the recorded trust deed did not bear the alterations made by Gardner and which were stricken by the court's reformation.

Waite may have been careless in not personally checking the instruments for change. Mere carelessness, however, is not necessarily a defense to an action for reformation. Lippire v. Eckel, 178 Neb. 643,

134 N. W. 2d 802; Story v. Gammell, 68 Neb. 709, 94 N. W. 982.

Was Gardner guilty of inequitable conduct? The trial court found that under the circumstances of the case since Gardner made material changes in the note after it was delivered to him, he had a duty to speak to bring the changes to the attention of the plaintiff or his counsel. Gardner did not send the note to either Waite or Waite's attorney. He entrusted it to Salestrom, his general partner. Gardner had no reason to know whether Waite would be present at the closing. Waite testified he had not planned to be present, but was in the area anyway so attended for the purpose of signing the release rather than handling that part of the transaction by mail.

A failure to disclose a change made in a written instrument, which change modifies the prior agreement, may be such inequitable conduct as will, together with mistake on the part of the other party, justify reformation. Cases in point are: Hugo v. Erickson, *supra;* Kaufmann v. Woodard, 24 Wash. 2d 264, 163 P. 2d 606; Guastella v. Wardell (Miss.), 198 So. 2d 227; National Savings & Loan Assn. v. Cook, 183 Ark. 503, 36 S. W. 2d 671; Tokio Marine & Fire Ins. Co. v. National Union Fire Ins. Co., 91 F. 2d 964. The evidence and the law fully justified the court's finding that Gardner's conduct was, under the circumstances, inequitable.

We note in passing that had the note transaction been an original transaction so that the alteration might have been considered a counteroffer by Gardner, the situation would, of course, have been quite different and different principles might be applicable, but that is not this case where an antecedent agreement was being implemented.

We note one further matter. Mrs. Gardner was not a party to the original agreement and had not signed the $250,000 note. As to her, there was no

previous agreement to which reformation could be made to conform. As to her, the court erred in granting reformation and the judgment against her is set aside.

The remaining matter for consideration is the appellee's motion to dismiss the appeal of the Salestroms. The latter did not move at any time to set aside the judgment. They filed no pleading asserting a meritorious defense. Salestrom testified at trial as a witness for Gardner. It is evident that he had no defense on the merits separate from that of Gardner. Under the provisions of section 3-118(e), U. C. C., the liability of the makers of the note is joint and several. Sturgis, Cornish & Burn Co. v. Miller, 79 Neb. 404, 112 N. W. 595, upon which Salestroms rely for the proposition that the setting aside of the judgment against Gardner ipso facto set aside the judgment against them, is not in point. The cited case involved a judgment against principal and surety and the judgment against the principal was set aside. Liability of the surety, of course, depended upon the liability of the principal. That is not this case where the liability is joint and several. The judgments were not an entirety. The judgment against Salestrom had become final. There was no timely appeal. The motion to dismiss the appeal of Salestroms is granted.

AFFIRMED AS MODIFIED.