JERRY L. CUNNINGHAM, APPELLANT, V. ESTHER B. COVALT ET AL., APPELLEES.

283 N. W. 2d 53

Filed September 11, 1979. No. 42232.

Holtorf, Hansen, Kovarik & Nuttleman, P.C., for appellant.

Reddish, Curtiss & Moravek and Thomas A. Danehey, for appellees.

Heard before BOSLAUGH, McCOWN and BRODKEY, JJ., and RIST and WOLF, District Judges.

RIST, District Judge.

Plaintiff-appellant, Jerry L. Cunningham, asserting ownership of the south one-half of Section 17, Township 20 North, Range 47 West of the 6th P.M., Morrill County, Nebraska, brought this action in equity against defendants-appellees, Esther and Floyd Covalt and F & P Covalt Co., Inc., owners of the remainder of the section, to determine the north line of plaintiff's land as surveyed for the erection of a permanent fence thereon and to enjoin defendants from interfering with plaintiff's use of his land to that line. Defendants answered and cross-petitioned for reformation of the deeds from defendants to plaintiff, under which plaintiff claims title, upon the basis of mutual mistake as to the north boundary line of plaintiff's land and to enjoin plaintiff from trespassing north of such line as reformed.

After trial, during which the trial court viewed the premises, a decree was entered dismissing plain-

tiff's petition, reforming the deeds as prayed for by defendants, and quieting title to the area in dispute in the defendant, Esther B. Covalt. Plaintiff appeals, assigning as error the reformation of the deeds, the finding of sufficient evidence to sustain the reformation, and the failure to grant plaintiff the relief he sought.

The record reflects that until January 26, 1976, defendant, Esther B. Covalt, owned all of the section here involved. On that date she and her husband, Floyd, conveyed an undivided two-thirds interest in the south one-half of the section to F & P Covalt Co., Inc., a family corporation, reserving certain mineral rights in grantor.

In late 1975 Mrs. Covalt was contacted by plaintiff and his brothers seeking to purchase the south one-half of the section. During the discussion Mrs. Covalt gave plaintiff an ASCS aerial photograph of the section upon which she had drawn a line dividing it at the approximate location of a partial fence dividing the pasture ground in the north half of the section from the cultivated ground in the south half. There is some dispute as to whether Mrs. Covalt talked of selling the south half of the section or only the land south of the fence, she maintaining, however, that the line she drew was intended to refer to the fence line as extended and that she was selling the crop ground south of the fence.

The evidence shows that in the approximate middle of the section there is a partial fence running generally east and west, neither end of which extended to the east and west boundaries of the section. Plaintiff was familiar with the fence and its location prior to the sale. It further appears that, except for a triangular piece of pastureland of approximately 25 acres in the northeast corner thereof, the land south of the fence as extended is crop ground while to the north it is predominantly pasture.

In April 1976, the plaintiff advised Mrs. Covalt he had arranged his finances for the purchase of the land and the parties met on Saturday, April 3, 1976, in the office of Robert Bulger, attorney for the Covalts. At that time Mrs. Covalt had a written memorandum concerning the sale which was read by the plaintiff. In it Mrs. Covalt had described the land to be sold as "S½-Sec 17-20-47-300 acres more or less. Bounded by county road. South side, county road west side, School Section on east side. North side — pasture fence line, fence to be extended on both east and west to the road." She also had another aerial photograph of the section on which she had noted "To sell S½ 17-20-47, 300 acres more or less." Following discussion by the parties, Mr. Bulger drew up a memorandum agreement for the sale of the south half of the section which provided in part that "Buyers [sic] has inspected premises and accepts in present condition an acreage of approximately 300 acres, except that seller will extend north fence to east and west boundaries." The parties executed this agreement.

Bulger subsequently prepared a more detailed contract which the parties did not sign but which Bulger testified reflected the parties' understanding on April 3. This agreement described the premises as the south half of the section and provided in part: "The total acreage of the real estate being sold is approximately 300 acres and that it is bounded on the south and west by a county road, on the east by a school section and on the north by a partial fence. The Sellers agree to extend the north fence in a straight line to the west to the County road and to the east to the school section boundary."

Plaintiff testified he recalled no conversation in Bulger's office that the fence line was to be a boundary but thought he was buying the south one-half of the section.

The deeds subsequently prepared by Bulger, which

were executed and delivered on May 17, 1976, described the real estate as the south one-half of the section containing 300 acres more or less but with no reference to boundaries.

Subsequent to the sale the Covalts extended the existing fence east to the east line of the section without protest or objection from the plaintiff. They held up extending the fence west at plaintiff's request so he could fill in a blowout in that area.

Plaintiff installed two pivot irrigation systems in the south part of the section but when he operated the one in the southwest quarter thereof it ran through the existing fence on the north tearing out a portion of it. Plaintiff initially expressed regret that this happened.

In late April 1977, plaintiff caused a survey to be made to locate the half section line running east and west through the section. The survey line ran north of the fence line, being from 30 feet to over 100 feet north of the fence line at various points. Plaintiff testified he understood the north line of the property he purchased to be a survey line. Defendants testified they had told plaintiff a survey was not necessary and that they were selling the land south of the fence as extended.

The trial court reformed the deeds from defendants to provide that the interests conveyed to plaintiff were "[A]ll that part of Section 17, Township 20 North, Range 47, West of the 6th P.M., Morrill County, Nebraska, situated south of the pasture fence extending east and west in the approximate middle of Section 17 as it existed April 3, 1976, and as extended to the east and west boundaries of said Section 17, commonly known as South Half, and consisting of 300 acres more or less." The trial court also quieted in Esther B. Covalt "Title to all that portion of Section 17, Township 20 North, Range 47, West of the 6th P.M., in Morrill County, Nebraska, north of the pasture fence line as it existed April 3, 1976, as ex-

tended to the east and the west boundary lines of said Section 17 * * *.''

This being an equitable action, it is tried de novo in this court, giving consideration to the fact that the trial court observed the witnesses, their manner of testifying, accepted one version of the facts rather than the opposite, and also that the trial court inspected and viewed the premises. Waite v. Salestrom, 201 Neb. 224, 266 N. W. 2d 908; Webb v. Lambley, 181 Neb. 385, 148 N. W. 2d 835.

The basic question to be decided is whether the evidence justifies the reformation of the deeds. The applicable rules of law are: (1) Reformation for mistake will be granted where the mistake is mutual to both parties. Waite v. Salestrom, *supra*: Booth v. Wilkinson, 195 Neb. 730, 240 N. W. 2d 578. (2) Such mutual mistake must be proved by clear, convincing and satisfactory evidence. Waite v. Salestrom, *supra*; Booth v. Wilkinson, *supra*.

We find the record discloses evidence to the degree required by law that both parties understood the fence line as extended was to be the north line of the property purchased by plaintiff. It is clear that the fence was known to both parties; it was referred to as the boundary in Mrs. Covalt's memorandum which plaintiff read before the memorandum agreement was prepared and signed; and it is so referred to in the memorandum agreement set out in the unexecuted contract which Mr. Bulger testified represented the understanding of the parties. This is reinforced by the action of the Covalts in extending the existing fence east without protest from the plaintiff and their delay in extending it west upon request by plaintiff so that he could fill in a blowout in that area. The trial court was justified in finding from such evidence that the parties understood the fence was the line notwithstanding other references to the south half of the section.

It is appropriate to note that a visible monument

known to both parties and considered by them as defining the boundaries is particularly persuasive evidence of the boundary location notwithstanding a deed description to the contrary. Burke v. Welch, 92 Neb. 773, 139 N. W. 684; Booth v. Wilkinson, *supra*. When all parties to a deed intended that' it convey a certain property with a designated boundary, and there is no mistake about the identity of the property to be conveyed, but the deed incorrectly includes more land than the parties intended and both parties labored under the same misapprehension that the deed only described the land intended to be conveyed, there is a mutual mistake in the deed which equity may reform. Lippire v. Eckel, 178 Neb. 643, 134 N. W. 2d 802. Such is the case here.

We are aware that plaintiff disputes this finding and maintains his understanding was that he purchased the south half of the section as reflected by survey. We conclude, however, that the evidence outlined above is legally sufficient and more persuasive that the finding and decision of the trial court were correct. The fact that plaintiff denies it does not preclude the reformation. Booth v. Wilkinson, *supra*; Olds v. Jamison, 195 Neb. 388, 238 N. W. 2d 459.

Plaintiff argues that certain evidence was improperly received and considered at trial. Such matters were not assigned as error and will not be considered here. McClellen v. Dobberstein, 189 Neb. 669, 204 N. W. 2d 559. Moreover, our examination of the record discloses no error as would require our taking note of the same absent such assignment.

The judgment and decree of the trial court are correct and are affirmed.

AFFIRMED.