DONALD R. JOHNSON, APPELLANT, V. GAY STOVER ET AL.,
APPELLEES.
354 N.W.2d 142

Filed August 10, 1984.   No. 83-329.

Lieske and Kristensen, for appellant.

Mark L. Eurek, P.C., for appellees.

KRIVOSHA, C.J., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiff, Donald R. Johnson (hereinafter Johnson), brought this action against defendants Gay Stover, Robert Klimek, and Howard Shimon, seeking damages resulting from a trespass on Johnson's land caused when defendants' pivot irrigation system ran through Johnson's fence and onto Johnson's land.

The defendants' answer alleged generally that named defendants Stover and Klimek had no interest in the land or pivot irrigation system; that Shimon was an owner of the land; and that there had been no trespass because the land onto which the pivot irrigation system had gone had been sold to Shimon by Johnson but, through mistake, the land was described in error and Johnson's fence had been erected in the wrong place.

Shimon and his wife Marian then filed an "Amended

Cross-Petition; Counterclaim" against Johnson and his wife, and against other named defendants. The only reason for the presence of the other named defendants (all of whom entered a voluntary appearance in the case) was to bring in all other persons who were named in the chain of title to the property described in the case. The others named (Stover, Wagners, Collinses, and Dugans) were participants in a tax-related, property exchange transaction with the Shimons and have no real interest in the merits of this lawsuit. Therefore, we will approach the matter as did the trial court, treating Johnson as plaintiff, Shimon as defendant, and Howard and Marian Shimon (hereinafter Shimons) as counterclaimants against Johnson.

Shimons' counterclaim alleged that in 1978 Johnson owned all of Section 31, Township 14 North, Range 14 West, of the 6th P.M., in Sherman County, Nebraska (hereinafter called the section), with the exception of two tracts of land of a total area of approximately 11 acres which had previously been granted to the State of Nebraska for road purposes. The counterclaim further alleged that in the spring months of 1978 Johnson installed two center pivot irrigation systems on the western part of the section; that these systems were 10-tower Lockwood pivots, which irrigated almost all of the west half of the section and part of the east half of the section; and that Johnson or his tenant farmed the land irrigated by the pivot systems in 1978 and 1979. Shimons further alleged that in September of 1979 Johnson, through his agent, offered to sell to Shimons' agent the land that had been center-pivot irrigated during the years 1978 and 1979 and that Shimons agreed to purchase that land; and, further, that in the purchase agreement Johnson agreed to install and pay for two new Zimmatic pivots in the same location as the existing pivots, and to install a fence between the land retained by Johnson and that sold to Shimons. The Shimons' counterclaim further alleged that they had relied on the representations of Johnson's agent that Johnson was conveying all the land irrigated by the new pivot systems; that, through mutual mistake, the deed conveying such land referred to the west half of the section plus the west 110 feet of the east half of the section; and that the described 110 feet was not

sufficient land to permit the irrigation pivot system to operate. Shimons prayed that the deed from Johnson to Shimons' predecessors in title be reformed to reflect the correct description of the land intended to be conveyed.

Johnson generally denied the allegations of the counterclaim. The court then bifurcated the trial and heard the counterclaim first, since Johnson would have no right to damages for trespass if the deed from Johnson to Shimons' predecessors in title was reformed as prayed for in the counterclaim.

After trial on Shimons' counterclaim the trial court entered its decree reforming all the deeds involved to reflect that the west 172 feet of the southeast quarter was conveyed, rather than the west 110 feet as set out in the deeds. Johnson timely filed a motion for new trial, which motion was overruled, and has perfected his appeal to this court.

In his appeal Johnson assigns three errors, which may be consolidated into two: (1) That the trial court erred in overruling Johnson's motion in limine (which sought to exclude evidence of all prior negotiations between the parties to the contract as written) and in admitting parol evidence produced to modify the terms of a written contract and deed; and (2) That the trial court's decree is not sustained by a clear preponderance of the evidence necessary to reform a contract and deed. For the reasons hereinafter set out we affirm.

As the case is presented to us, it is an equitable action seeking the reformation of a deed to certain real estate. Such an action is tried de novo on appeal to this court, subject to the condition that when evidence on a material question of fact is in irreconcilable conflict, this court will give weight to the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. *Waite v. Salestrom*, 201 Neb. 224, 266 N.W.2d 908 (1978).

The record shows that Johnson owned all of the section prior to 1977. Johnson desired to sell the whole section, or any part of it, and on August 13, 1979, listed the section for sale with Gene Boysen & Associates, Inc., a real estate firm in Grand Island. The listing included the two irrigation systems on the land,

described as "two Lockwood ten-tower" pivot systems. Gene Boysen showed the section to Gay Stover, Howard Shimon's brother-in-law and representative throughout the negotiations. Stover testified that he and Boysen looked at the land and that Stover told Boysen that Shimon would be interested in buying part of the section. In August of 1979 the Shimons viewed the land with Boysen and Stover, and while out on the section, Stover testified that he asked Boysen "if we got the pivots and all the land that it run on and he said, yes, that's the way it was represented to us." Stover also testified that he told Boysen "that we had to have enough land to run the pivots on" and that Boysen responded that there would be enough land.

At the time Stover was viewing the land, the pivots were operating and a corn crop was in. Stover also testified that at the time of his viewing of the section there were two posts which apparently marked a division between the two quarters. Stover described these as "corner posts," and testified that the posts were located east of the fence line that was later installed 110 feet east of the center of the section—one post being approximately 100 feet east of the fence line and the other "about in the fence line." The growing crops irrigated by the pivot system were, at this time, "[a]bout flush with that post on the west side as you sited [sic] over the posts."

Shimon testified that at the time he viewed the land in August of 1979, Boysen told him that the land "would be purchased with the room for the two ten-tower pivots." Shimon also remembered Stover's conversation with Boysen on the same subject.

Boysen testified, as to the same conversations with Stover and Shimon, that he could not remember the details of the conversations. In response to a question by Shimons' counsel to the effect "did you represent to them [Shimon and Stover] that you would be getting all the pivot property?" Boysen answered, "I don't remember that I specifically said that. I think knowing how I operate in such situations, I think it would be implied if not said." There is no contention raised by Johnson that Boysen was not his agent in all these transactions and conversations.

Johnson testified he reached the figure of 110 feet by his own calculations. He knew that the highway on the 11 acres granted

to the State of Nebraska on the east side of the section had narrowed the east-west width of the section by approximately 160 feet, so he "measured it off and tried to be fair on both half sections. I measured the width of it and I felt that by giving them 100 to 110 foot would give me enough room on the east half section to put two more pivots and it would still be approximately the same size as the west half section . . . ." There was no evidence that shows the Shimons were aware of the narrower east half section resulting from the road. Testimony adduced on behalf of the Shimons showed that the fence installed 110 feet into the east half of the section would have to be moved an additional 62 feet to the east to let the pivot operate.

After Johnson had made the 110-foot determination, a purchase agreement was entered into between Johnson and Stover, acting as Shimons' representative. This purchase agreement provided for the sale and purchase of the west half of the section, plus 110 feet into the west side of the east half of the section. The agreement also provided that Johnson would buy and install two new pivots for the land, and provided for the sale by Johnson to buyers of "2 irrigation engines, wells, and pumps, and allied equpiment [sic] in places." No price per acre was set out, but the buyers agreed to pay a "sum of $334,000.00 plus price of new pivots complete." Johnson was also required to install a fence at the line 110 feet east of the half-section line.

Closing was had, pursuant to the purchase agreement, in March 1980. Late in 1980, Johnson installed the two new pivots on the same pads on which the Lockwood pivots had been installed. The new Zimmatic pivots were 1,295 feet from the center to the end of the steel. The Lockwood pivots that were removed were 1,290 feet in length.

After hearing all the evidence the trial court found:

> The Cross-Petitioners have sought reformation on the basis of mutual mistake. This Court finds that the understanding of the parties prior to the execution of the offer to purchase was that as to the south west quarter, the seller would convey sufficient property to permit the operation of the existing pivot and that notwithstanding that mutual agreement, the seller caused the written

description on the offer to purchase and subsequent deeds to be a lesser property which was inadequate for the operation of the pivot. This Court finds that by failure to disclose the intentional misstatement, the actions of the Plaintiff constituted actionable fraud by false representation and justifiable grounds for reformation of the instruments.

Much of the law in this area is well settled. Both parties recognize that in an action for reformation of a written contract, the burden of proof rests upon the moving party to overcome the strong presumption arising from the terms of the written instrument. *Farmers Coop. Assn. v. Klein*, 196 Neb. 180, 241 N.W.2d 686 (1976). It is established that to warrant reformation of a written instrument, the evidence must be clear, convincing, and satisfactory. A mere preponderance of the evidence is not sufficient. *Waite v. Salestrom*, 201 Neb. 224, 266 N.W.2d 908 (1978).

Applying those principles to the case at bar, we have no difficulty in reaching the same conclusion as did the trial court. The parties, acting through their representatives, agreed to sell the property irrigated by the pivot. The unilateral determination by Johnson that the dividing line should be 110 feet into the east half of the section is not controlling as to the intent of the parties. That intent is fully established by all the evidence except that of Johnson. The circumstances surrounding the transaction point to only one conclusion—if Johnson agreed to, and did, install a 10-tower pivot irrigation system, he must have logically intended to convey sufficient land to let that 10-tower pivot be used. The finding of the trial court that the agreement of the parties was to that effect is fully supported by the evidence, and we reach the same conclusion.

Johnson argues that the trial court found there was fraud in the transaction, rather than mutual mistake, and that since fraud was not pled, the trial court's judgment must be reversed. In *Lippire v. Eckel*, 178 Neb. 643, 650, 134 N.W.2d 802, 807 (1965), quoting from *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961), we said, " 'It is the facts well pleaded that determine the nature of the action and the relief to be granted.' " Here, the facts were pleaded in the

petition as to mutual mistake. Johnson denied those facts in his answer, and in his testimony, in answer to the question, "Did you think at the time that you were giving of the 110 foot at the time that you asked that to be put in the contract that there would be sufficient ground for the purchasers to be able to operate their pivot as you had done?" Johnson replied, "To operate their pivot, was that the question? No."

Although the Shimons may have thought they were involved in a mutual-mistake situation, Johnson's general denial and Johnson's testimony above indicate that Johnson was willing to, and did, defraud Shimons. The pleadings as a whole presented enough facts to permit the court to reach the conclusion that it did.

The legal posture of the case does not change, in any event. As stated in *Waite v. Salestrom, supra* at 229, 266 N.W.2d at 912: "Equity will decree reformation of a contract for a mistake only if the mistake is mutual. . . . Equity may also grant reformation to conform to the antecedent agreement of the parties where there is mistake on one side and fraud or inequitable conduct on the other."

In this case there has been an antecedent agreement of the parties, as found by the trial court and this court, to sell the land irrigated by the pivot system; there has been a mistake on Shimons' part in accepting the 110-foot figure; and Johnson is at the least guilty of inequitable conduct in setting the 110-foot figure when he knew the pivot system would be useless if the 110-foot figure was used as the measurement of the land conveyed.

Johnson's reliance on the parol evidence rule is misplaced. As stated in *Olds v. Jamison*, 195 Neb. 388, 391-92, 238 N.W.2d 459, 462 (1976):

> Parol evidence is generally admissible when it is offered for the purpose of explaining and showing the true nature of the transaction between the parties. Central Constr. Co. v. Osbahr, 186 Neb. 1, 180 N.W.2d 139. In any event, this court has ordinarily applied the parol evidence rule only in the absence of fraud, mistake, or ambiguity. Securities Acceptance Corp. v. Blake, 157 Neb. 848, 62 N.W.2d 132.

Here, mistake and fraud were involved. Parol evidence was necessary in order that a determination could be made as to the terms of the antecedent agreement between the parties. As stated in 3 A. Corbin, Corbin on Contracts § 573 at 358-60 (1960) (a statement referred to with approval, or quoted in, *Central Constr. Co. v. Osbahr*, 186 Neb. 1, 180 N.W.2d 139 (1970), and *Olds v. Jamison, supra*):

> The use of such a name [the parol evidence rule] for this rule has had unfortunate consequences, principally by distracting the attention from the real issues that are involved. These issues may be any one or more of the following: (1) Have the parties made a contract? (2) Is that contract void or voidable because of illegality, fraud, mistake, or any other reason? (3) Did the parties assent to a particular writing as the complete and accurate "integration" of that contract?
>
> In determining these issues, or any one of them, there is no "parol evidence rule" to be applied. On these issues, no relevant evidence, whether parol or otherwise, is excluded. No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be, however formal, and however many may be the seals and signatures and assertions. No one of these issues can be determined by mere inspection of the written document.

Nebraska has consistently followed this rule. In *Story v. Gammell*, 68 Neb. 709, 712, 94 N.W. 982, 983 (1903), we said:

> An objection that the plaintiff can not have relief because he can not prove the allegations without varying the terms of a written contract by parol is scarcely deserving of mention. It is obvious that if this rule was applicable to cases like the one at bar the jurisdiction of the courts to reform instruments because of fraud or mutual mistake would be entirely defeated. The one purpose of such actions is to contradict or vary the terms of a written agreement, and the evidence, in most cases, is mainly or wholly oral.

See, also, *Cunningham v. Covalt*, 204 Neb. 512, 515, 283 N.W.2d 53, 55 (1979), where, although the parol evidence rule

was not discussed, this court affirmed the reformation of a deed conveying the south half of a section to reflect conveyance of land " 'south of the pasture fence extending east and west in the approximate middle' " of the section.

The judgment and order of the district court in this case are correct and are affirmed in all respects.

AFFIRMED.

BOSLAUGH, J., participating on briefs.