HELEN L. HAINES, APPELLEE, V. RAY MENSEN AND BARBARA MENSEN, APPELLANTS.

446 N.W.2d 716

Filed October 13, 1989.    No. 87-722.

Thomas J. Young, of Young & LaPuzza, for appellants.

H. Daniel Smith and Thomas V. Van Robays, of Smith, Trustin & Schweer, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and McGINN, D.J.

McGINN, D.J.

Ray and Barbara Mensen, husband and wife, appeal the order of the Douglas County District Court quieting title to property in the appellee, Helen L. Haines. We affirm.

Since 1958, the Mensens have leased on a month-to-month basis a house owned by the appellee and her husband, Clarence, who died June 22, 1984. In approximately 1963, the Mensens considered purchasing property in Washington County. When the Mensens told the Haineses about the possibility of terminating their lease, the Haineses indicated that they did not want the Mensens to move, as the Haineses had hoped the Mensens would look after them in their old age, since the Haineses had no known relatives.

Over a period of time, Clarence Haines showed Ray Mensen several drafts of deeds and explained the intentions of himself and Helen to deed property to the Mensens in exchange for care and assistance during the Haineses' older years. In December 1980 or early January 1981, Clarence Haines delivered to the Mensens the deed which is the subject of this action. The deed was then filed on January 13, 1981. The Mensens understood that the Haineses were deeding them what was referred to as

"the farm," based upon the Mensens' promise to care for the Haineses during their older years, and that the Haineses would exercise control over the property until the Haineses died, even though the deed had already been delivered.

The deed delivered to the Mensens was executed by Clarence and Helen Haines, conveying to Ray and Barbara Mensen, as joint tenants with the right of survivorship, the following described real estate, which was later quieted in Helen by the trial court: "Part of the Northeast Quarter of the Northeast Quarter of Section 9 Township 16 North Range 13 East all in Douglas County Nebraska as recorded in the Douglas County Register of Deeds office." However, the warranty deed that originally conveyed the property in question to Clarence and Helen as joint tenants described by metes and bounds a 15.34-acre tract of real estate in the northeast quarter of the northeast quarter of Section 9. The Mensens contended the deed should be reformed to include said metes and bounds description.

Approximately 7 months after the death of Clarence, Helen filed her petition, alleging three causes of action: failure of consideration to support the deed because of failure to care for Helen, inadequacy of the legal description, and undue influence on the part of Clarence in Helen's execution of the deed. Through a cross-petition, the Mensens alleged that the legal description contained in the deed was not complete and requested reformation.

The trial court found that there was adequate consideration to support the deed but that the legal description was inadequate, making the deed insufficient to convey title. The court found that there was insufficient evidence to support a reformation of the deed.

The appellants assigned as error the trial court's refusal to allow into evidence testimony of statements of Helen's deceased spouse, Clarence, the failure to order reformation of the deed, the failure to find that Helen was estopped to deny the validity of the deed, and the court's finding that the deed was void. We can consolidate these assignments of error into two issues: the sufficiency of the deed's legal description and the Mensens' request for reformation. A proceeding to reform a written

instrument is an equity action. *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986); *Hohneke v. Ferguson*, 196 Neb. 505, 244 N.W.2d 70 (1976). On appeal to the Supreme Court, an equity action is a trial de novo on the record, requiring this court to reach a conclusion independent of the findings of a trial court, but subject to the rule that where credible evidence is in conflict on material issues of fact, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989); *Hulinsky v. Parriott*, 232 Neb. 670, 441 N.W.2d 883 (1989).

We said in *Franz v. Nelson*, 183 Neb. 137, 138-39, 158 N.W.2d 606, 607 (1968):

"While it is true that a deed must describe land so that it can be identified, yet that is certain which by evidence aliunde can be made certain." City of Warsaw v. Swearngin (Mo.), 295 S.W.2d 174. "If the description in a deed identifies, or furnishes the means of identifying, the property conveyed, it performs its function, it being sufficient when from it the property can be identified." Harrison v. Everett, 135 Colo. 55, 308 P.2d 216.

In *Franz*, the following legal description was held to be sufficiently definite, when taken together with external evidence:

"a strip of land commencing 425 feet East of the middle of the public highway/ betwee (sic) section Nine (9) and Ten (10) Eldorado Township and 900 feet North of the Quarter line of the South west Quarter of section Number Ten (10), Eldorado Township, and running thence due South 2200 feet/ through the South West Quarter of sec. 10 Eldorado Twp. same to be a strip in width 10 feet during the whole of said course."

*Franz, supra* at 138, 158 N.W.2d at 607. Although "a strip of land" and a "part of" certain land might at first perusal be considered analogous, the "strip of land" in *Franz* was followed by a legal description which gave directions to the strip of land. However, the "part of" land in the deed in the instant case was not followed by directions in the form of a legal

description as to how to find the land.

In *Rupert v. Penner*, 35 Neb. 587, 53 N.W. 598 (1892), the legal description at issue referred to an unspecified, undivided quarter section of Section 16. We held that because the precise quarter of Section 16 was not stated, the description was so defective and imperfect that nothing passed by that writing. Although the deed in *Rupert* was eventually saved because of reference to another instrument, there is no other instrument to make reference to regarding the "part of" land sought to be conveyed in this case. Just as the precise quarter sought to be conveyed in *Rupert* was not described, neither is the precise "part of" land described in the Haines deed.

Because we find that the deed itself was insufficient to convey title, we next review the Mensens' request for reformation of the deed. We said in *Newton, supra* at 612-13, 386 N.W.2d at 429-30:

> Reformation is based on the premise that the parties had reached an agreement concerning an instrument, but while reducing their agreement to a written form, and as the result of mutual mistake or fraud, some provision or language was omitted from, inserted, or incorrectly stated in the instrument intended to be an expression of the actual agreement of the parties. See, *Schweitz v. State Farm Fire & Cas. Co.*, 190 Neb. 400, 208 N.W.2d 664 (1973); Restatement (Second) of Contracts § 155 (1981). . . .
>
> . . . Before reformation of an instrument will be allowed, the party seeking such reformation on a claim of mutual mistake must, by clear and convincing evidence, prove existence of such mistake in reference to the instrument to be reformed. *Johnson v. Stover*, [218 Neb. 250, 354 N.W.2d 142 (1984)]; *Cunningham v. Covalt*, 204 Neb. 512, 283 N.W.2d 53 (1979). Clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. . . .
>
> . . . "A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form

does not express what was really intended by the parties." *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.*, 84 N.M. 524, 530, 505 P.2d 867, 873 (1972).

If reformation is to be granted, then, we must first find that the Haineses and the Mensens had reached a meeting of the minds regarding the property. An essential element of a meeting of the minds between the Haineses and the Mensens is the extent of the land that was to be conveyed. Testimony did include statements from both Ray and Barbara Mensen and other neighbors and acquaintances that the Haineses' farm had been left to the Mensens or that the Haineses intended to leave the farm to the Mensens. However, there was no testimony indicating with any detail what property was included when referring to the Haineses' farm. We are left to speculate as to whether the Haineses' farm was in reference to one house and part of the farmland or any other possible combination of property that to the various testifiers represented the Haineses' farm. Furthermore, testimony indicating that several different deeds were drafted over a period of time, and Ray Mensen's testimony that the Haineses approached the Mensens with the deed and that there were no propositions or negotiations regarding the deed, more closely describes a gift than a meeting of the minds. The testimony is not indicative of a meeting of the minds.

The appellants assert that the record demonstrates that if there was insufficient evidence to demonstrate the extent of property to be conveyed, it was the result of the trial court's improperly excluding evidence regarding statements made by Clarence Haines. Testimony from witnesses as to alleged statements made by Clarence was offered by the appellants to prove the truth of the alleged agreement regarding the deed, but was excluded as hearsay. Appellants argue that such testimony should have been permitted because it constituted an admission against interest and because Clarence was acting as an agent authorized to speak for Helen pursuant to Neb. Rev. Stat. § 27-801 (Reissue 1985) or, in the alternative, that the statements represented an exception to the hearsay rule according to Neb. Rev. Stat. § 27-804 (Reissue 1985) because of the death and unavailability of Clarence. We need not decide this issue.

Because no offer of proof was made by the appellants, our review of this alleged error leads us to Neb. Rev. Stat. § 27-103(1) (Reissue 1985), which provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . (b) . . . the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." There is no doubt but that a substantial right of the appellants was affected by the excluding of the evidence regarding statements made by Clarence. However, our de novo review of the record indicates that the context of the questioning did not make apparent the substance of the evidence. We find that the need for an offer of proof was not superfluous in this case, and instead reiterate that there is no question but that the better trial practice is always to make an offer of proof when evidence is excluded. *Sherman County Bank v. Kallhoff*, 205 Neb. 392, 288 N.W.2d 24 (1980). Because we find that the substance of the evidence was not apparent from the context of the questioning, the appellants are precluded from alleging this issue as error.

Our de novo review does not reveal clear, convincing, and satisfactory evidence of a meeting of the minds, and therefore there is no basis for reformation. The action of the trial court in quieting title to the property in the appellee is affirmed.

AFFIRMED.