LYLE HOHNEKE, APPELLEE, v. WILLIAM FRANKLIN FERGUSON, APPELLEE, IMPLEADED WITH LYLE R. HOHNEKE ET AL., APPELLANTS.

244 N. W. 2d 70

Filed July 14, 1976. No. 40468.

Charles E. McDermott, Duane W. Schroeder, and Budd B. Bornhoft, for appellants.

Olds & Swarts, for appellee Hohneke.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

The question on this appeal is whether a certain gift deed, containing an admittedly erroneous description, may be reformed at the behest of the grantee after the death of the grantor. The District Court, without making any specific findings or stating any conclusions of law, granted the reformation. We reverse.

Both parties cite and rely upon principles announced in or claimed to be drawn from statements of this court in Dowding v. Dowding, 152 Neb. 61, 40 N. W. 2d 245. We there noted that: "Courts generally agree that a purely voluntary conveyance may not be reformed in equity at the suit of the grantee against the grantor during his lifetime without his consent." That this is the general rule there appears to be no doubt and we find no cases holding to the contrary. See, Annotation, 69 A. L. R. 423, part II, p. 424; Annotation, 128 A. L. R. 1299, part II, p. 1300; 76 C. J. S., Reformation of Instruments, § 10 (a) to (c), pp. 333, 334; 66 Am. Jur. 2d, Reformation of Instruments, § 42, p. 566.

The underlying rationale for the rule is set out at 66 Am. Jur. 2d, Reformation of Instruments, section 42, page 566: "Equity will not decree reformation of a gift

over the opposition of a grantor, since such opposition denies an essential element of the gift—namely, the voluntary action of the donor. . . . There being no consideration moving to the grantor, the volunteer has no claim on him. If there is a mistake or a defect, it is a mere failure in a bounty which the grantor was not bound to make and thus is not bound to perfect."

In Dowding v. Dowding, *supra,* we noted that " 'a volunteer must take the gift as he finds it,' " quoting M'Mechan v. Warburton, 1 Ir. R. 435 (1896).

The precise question we must answer here is whether the above principles are applicable under the particular facts of this case where the grantee brings the action not against the grantor who is deceased, but against the residuary devisee of the grantor's will. In Dowding v. Dowding, *supra,* we said that "the principles precluding reformation of a voluntary conveyance at the suit of the grantee against the grantor during his lifetime do not ordinarily, as a matter of law, apply in favor of the grantor's heirs at law after his death." The grantee relies upon the above statement to support his position and the judgment of the trial court in his favor. The defendant, residuary legatee, however, takes the position that the rules as actually applied in Dowding v. Dowding, *supra,* do not fit this case because here the evidence supports the conclusion that the grantor, had she lived, would not have consented to the reformation, whereas in Dowding v. Dowding, *supra,* the evidence tended to support the conclusion that the grantor would have corrected the mistake during his lifetime had he known of it. In Dowding v. Dowding, *supra,* we found that: " 'Under the record here presented, the . . . [grantor] would doubtless have desired to make the correction sought by this [reformation] action, had he learned of the mistake in his lifetime.' " We there also quoted the following language from M'Mechan v. Warburton, *supra:* " 'It was contended by the defendant Warburton that, as this was a voluntary deed, this court cannot interfere

to rectify it in favour of volunteers. The elementary principle of this Court, that it will not interfere to enforce specific performance of an incomplete voluntary agreement, or to rectify an erroneous voluntary disposition of property in favour of a volunteer, is subject to this exception, that after the death of the donor it will interfere to rectify a disposition which is clearly proved to have, through mistake, failed to carry out the proved intention. . . . If the donor were living it would have, of course, been competent for him to consent to such rectification, or to dissent from it. If the latter, it could not be reformed against his will, for a volunteer must take the gift as he finds it; but after his death, *and in absence of proof of any change of intention*, it cannot be assumed that he would have dissented, and it might even be presumed that he would not dissent.' " (Emphasis supplied.) This statement tends to support the proposition that the court will allow the reformation of a deed against a grantor's heirs if the grantor himself would have permitted such a reformation during his lifetime and, conversely, that if the evidence shows that the grantor would not have consented to the reformation had he lived, then reformation will not be granted.

We now review the evidence in the case before us. The plaintiff, Lyle Hohneke, a grantee in the deed, is the son of the deceased grantor and testatrix, Ella Ferguson. The deed named Lyle and the grantor, Ella, as joint tenants with right of survivorship. The defendant, "Ricky" Hohneke, residuary legatee, is the son of Lyle and grandson of Ella. The deed in question was executed on June 27, 1972, and delivered shortly thereafter. It purported to convey 80 acres of land in Wayne County, Nebraska. Because of a mistake in the description furnished the scrivener, the deed described not an 80-acre tract owned by Ella Ferguson, but an adjacent 160-acre tract. About 1 week previous to June 27, 1972, Ella conveyed two tracts of land in Arkansas which she owned to herself and Lyle as joint tenants. Shortly

after June 27, 1972, Ella became displeased with Lyle and, according to Lyle, a "family feud" ensued. Ella asked him to have his name "removed" from the deeds to the Arkansas land. He refused. Lyle further testified that he was "advised" (by whom the record does not show), that Ella wanted his name taken off the Nebraska deed as well. In August 1972 when the deed here involved was sent to Nebraska for recording the misdescription was discovered. The evidence indicates that Lyle was told by an attorney that it was advisable to procure a corrective deed from Ella. Lyle testified he did not attempt to do so. The evidence supports the conclusion that the reason he did not was because he felt that Ella would not execute a corrective instrument.

On January 2, 1973, Ella, who was domiciled either in Missouri or Arkansas, made a will. In this will she bequeathed to Lyle "the sum of $10 (Ten Dollars) as his full share of my estate." Paragraph third of the will provided: "After the payment of my just debts and taxes and the foregoing specific bequests, then I give, devise and bequeath all the rest, residue and remainder of my said estate and property, whether real, personal or mixed, and wheresoever situate, to my grandson, LYLE R. (RICKY) HOHNEKE, now residing at 2020 First, Apartment 80, Cherry, Washington, to have and to hold the same to himself and his heirs and assigns absolutely and forever in fee simple title." The will also provided that if Ricky should predecease the testatrix, his children should take his share.

The will has been admitted to probate in Wayne County, Nebraska. Lyle has not filed any objections to its probate. The record shows that the only property to which the residuary clause could apply is the 80 acres standing in the testatrix' name in Wayne County, Nebraska. If the deed is reformed no property will pass under the residuary clause.

Ella died on February 6, 1973. While on the way to the hospital in which Ella died, she told the ambulance

driver she did not want to see her son, Lyle. The evidence shows that Lyle considered that Ricky became the owner of the Wayne County land under the terms of the will. He obtained a power of attorney from Ricky to cause the will to be admitted to probate. Ricky was then in the Air Force and en route to foreign duty. Lyle induced Ricky to agree to give him a one-half interest in the land for his service as attorney in fact. Lyle went to Wayne County and began this litigation. Ricky then revoked the power of attorney.

An action to reform a written instrument is equitable in nature and on appeal to this court is triable de novo. Parry v. State Farm Mut. Auto. Ins. Co., 191 Neb. 628, 216 N. W. 2d 875. We conclude from the evidence that Ella would not have consented to the reformation during her lifetime had she known of the mistake after it was discovered.

We hold that a purely voluntary conveyance will not be reformed at the behest of the grantee after the grantor's death as against the person who in the absence of reformation takes the property under the will of the grantor where the evidence establishes that the grantor would not have consented to the reformation had he lived.

REVERSED.

NEWTON, J., concurs in the result.