OMAHA DOOR COMPANY, A CORPORATION, APPELLEE, V. MEXICAN FOOD MANUFACTURERS OF OMAHA, INC., APPELLANT.

439 N.W.2d 776

Filed May 19, 1989.   No. 87-668.

James R. Place and Alan M. Thelen, of Breeling, Welling & Place, for appellant.

James Martin Davis for appellee.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and RIST, D.J.

WHITE, J.

This is an appeal from a judgment of the district court for Douglas County granting reformation of a lease agreement executed by the parties on May 26, 1982. The property was leased to the appellant, Mexican Food Manufacturers of Omaha, Inc. (Mexican Food), by the appellee, Omaha Door Company (Omaha Door). The appellant contends that the district court erred both in granting reformation of the written lease agreement and in awarding damages of $14,852.92 to Omaha Door, because insufficient evidence exists to support the money judgment.

The parties began negotiating the rental of property owned by Omaha Door located at 36th and T Streets in Omaha in November of 1981. These negotiations continued, off and on, through May of 1982. Present at these negotiations were the presidents of the two corporations, Leo Murnan of Omaha Door and Ricardo Correa of Mexican Food. Also present during the early stages of these negotiations was Don Byrne, Omaha Door's head bookkeeper. The parties agreed on a base rent of $1 per square foot.

When Correa first examined the premises, he noted that the property would require remodeling and improvements before it would be suitable for occupation by Mexican Food. Initially, Correa estimated that it would cost from $30,000 to $35,000 to remodel the building to suit the use anticipated by him. Correa wanted Omaha Door to use its own funds on behalf of Mexican Food, as he did not feel that Mexican Food should be obligated to pay for all of the remodeling expenses. Omaha Door originally refused to acquire a loan for Mexican Food. However, as a result of subsequent negotiations, Omaha Door agreed to borrow $15,000 on Correa's behalf, so long as Mexican Foods would repay the amount, with interest, over the term of the lease. Correa insisted that this amount was insufficient, and negotiations subsequently broke down. Byrne was present throughout these negotiations. Shortly thereafter, negotiations resumed between the parties, but Byrne was not

present at these subsequent negotiations. As a result of these negotiations, a rental agreement was eventually signed. It is the terms of this lease agreement regarding the amount of the loan acquired on Mexican Food's behalf that is the basis of this suit.

The terms that were included in the written lease are not disputed. The lease provides an amortization schedule requiring repayment of the loan over the 5-year period of the lease. The amount amortized, allegedly in error because of a mutual mistake, is $15,000.

The appellant contends that the agreement as written is correct. Mexican Food alleges that the appellee, Omaha Door, agreed to pay $25,000 for the remodeling, that Mexican Food would repay the appellee $15,000, and that repairs in excess of $25,000 would be paid by the appellant, an amount of $7,200. In contrast, the appellee argues that as a result of the renewed negotiations, Mexican Food agreed to come down on its demand and Omaha Door agreed to come up, eventually agreeing that $25,000 would be borrowed by Omaha Door on behalf of Mexican Food. This amount was agreed upon after an estimate was made disclosing that the total cost of the remodeling would be $32,000. Thereafter, Omaha Door agreed to borrow $25,000 for Mexican Food, subject to full repayment by Mexican Food, and Mexican Food agreed to use at least $7,000 of its own funds to accomplish the remodeling. The $25,000 was to be paid back to Omaha Door by Mexican Food in monthly principal and interest payments amortized over the 5 years of the lease.

According to the appellee, $15,000 instead of $25,000 was mistakenly amortized in the lease because of an error committed by the bookkeeper for Omaha Door, Byrne. Byrne was responsible for including the repayment schedule in the rental agreement, but was unaware that during subsequent negotiations Murnan of Omaha Door had agreed to borrow $25,000 on behalf of Mexican Food, instead of the $15,000 discussed in the original negotiation. As a result of this misunderstanding, Byrne placed the incorrect repayment schedule in the contract based on a loan of $15,000, instead of the $25,000 actually borrowed by Murnan. This error was discovered by Byrne in September, when he examined the

Mexican Food file in computing the amount of rent due for the month of October, the date Mexican Food's occupancy was to begin.

When Byrne examined the file, he noticed for the first time a letter from Correa to Murnan dated March 10, 1982. The letter states in part:

> I want to express to you that I have a clear understanding that you will only borrow on my behalf $25,000.00 to initiate leasehold improvements on your building at 5501 South 36th Street.
>
> I understand that even though you are borrowing the $25,000 on my behalf, I will have sole responsibilities [sic] for repayment of this loan. It comes down to the fact that I will be investing over $35,000 (including interest) in your building, but that you will be securing the loan for me.

After discovering this communication, Byrne realized that he had mistakenly included a repayment schedule only for the $15,000 originally discussed by the parties. He contacted Murnan immediately regarding the mistake, and Murnan notified his attorney of the error.

The district court granted reformation of the agreement, finding that a mutual mistake existed regarding the amount of the loan amortized in the lease agreement. It is with this remedy that the appellant claims error.

An action to reform a written contract is equitable in nature and is tried de novo on appeal to the Supreme Court. *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985); *Hohneke v. Ferguson*, 196 Neb. 505, 244 N.W.2d 70 (1976). This review is subject to the rule that where credible evidence is in conflict on material issues of fact, the Supreme Court will consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Ridenour, supra*; *Burton v. Annett*, 215 Neb. 788, 341 N.W.2d 318 (1983).

Reformation is decreed in order to effectuate the real agreement of the parties when a written instrument does not represent their true intent. *Ridenour, supra*. In this jurisdiction reformation may be decreed where there has been a mutual mistake. In such an event, the erroneous written agreement is conformed to the antecedent agreement of the parties; that is to

say, to the agreement entered into prior to the execution of the erroneous written agreement. *Ridenour, supra*; *Johnson v. Stover*, 218 Neb. 250, 354 N.W.2d 142 (1984).

In the present action the appellee alleges that Byrne entered the wrong figures in the lease agreement by mistake and that the parties had previously agreed that Correa of Mexican Food would be responsible for full repayment of the $25,000 loan undertaken by Omaha Door on its behalf. In contrast, the appellant contends that if such a "mistake" exists, the mistake was only unilateral, as Mexican Food never intended to be responsible for more than $15,000.

A mutual mistake is a belief shared by the parties which is not in accord with the facts. A mutual mistake is one common to both parties in reference to the instrument to be reformed, each party laboring under the same misconception about their instrument. *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986). As stated by this court in *Newton*,

> "A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties." [Citation omitted.]
>
> If incorrect language or wording is inserted by mistake, including a scrivener's mistake, into an instrument intended to reflect the agreement of the parties, such mistake is mutual and contrary to the real intention and agreement of the parties.

*Id.* at 613, 386 N.W.2d at 430. To obtain reformation the evidence must be clear, convincing, and satisfactory. *Ridenour, supra*.

The evidence that the repayment schedule for $15,000 instead of $25,000 was entered in the lease agreement by the mistake of Byrne and that, in fact, both parties had previously agreed that Mexican Food would repay Omaha Door $25,000 is clear and convincing, entitling Omaha Door to reformation of the agreement. That this was the actual agreement of the parties is most clearly evidenced by the letter Correa wrote to Murnan on March 10, 1982, stating his "understanding" that the *$25,000* was being borrowed on his behalf and his

"understanding" that he had the sole responsibility for repayment of the loan. Merely because at trial Correa contended that this letter did not really mean *his* understanding at all does not prevent a finding of mutual mistake. The fact that one of the parties denies that a mistake was made does not prevent a finding of mutual mistake, nor prevent reformation. *Newton, supra*, citing *Olds v. Jamison*, 195 Neb. 388, 238 N.W.2d 459 (1976).

As stated above, although this action is triable de novo to this court, this review is subject to the rule that the trial court had the opportunity to observe the witnesses and accepted one version of the facts over another. *Ridenour, supra*. The trial court evidently found the testimony of Correa to be less credible than that of Murnan, especially in view of his March 10 letter. As a mutual mistake existed regarding the amount of the loan to be repaid by Mexican Food, the trial court properly reformed the lease agreement.

The appellant's second assignment of error, as to the proper amount of the monetary award order by the district court, is another matter. The amortization schedule as written and as reformed provides as follows:

|  | $15,000 (as written) | $25,000 (as reformed) |
|---|---|---|
| First year (interest only, per month) | 187.50 | 312.50 |
| Second through fifth years (principal and interest, per month) | 417.46 | 695.75 |

On the basis of this table, the difference amounts to $14,857.92. The amount ordered paid by the district court was $14,852.92. However, as of the trial date of June 22, 1987, the entire lease term had not yet ended. Rent is not payable until it falls due under the terms of a lease, and no suit can be brought for future rent in the absence of a clause permitting acceleration. *First Nat. Bank v. Omaha Nat. Bank*, 191 Neb. 249, 214 N.W.2d 483 (1974). Because of this rule, the appellant cannot be held liable for rent that had not yet accrued on June 22, 1987.

The appellee does not contest the application of this doctrine in the present case, but instead argues that the issue is moot, as the lease has expired by this time. However, as of the date of the district court judgment, June 22, 1987, 5 months 8 days of the lease term had not yet expired, amounting to a $1,465.66 difference in rent not yet accrued. Therefore, the district court award of $14,852.92 was in error in the amount of $1,460.66, and is vacated.

Nonetheless, in this court the cause is triable de novo, and we have the authority to enter an independent judgment. As of the date of this appeal, the entire amount of rent has accrued, and we therefore grant the appellee $14,857.92 in rent past due under the reformed lease agreement.

The judgment of the district court is hereby affirmed in part, and remanded for judgment to be entered in favor of the appellee for $14,857.92.

AFFIRMED IN PART, AND IN PART REMANDED.