[No. 29557.   Department Two.   June 19, 1945.]

F. H. MEYER, *et al., Respondents,* v. WILLIAM
YOUNG *et al., Appellants.*[1]

Geo. *Olson* and *Warren Hardy,* for appellants.

*Ralph B. Potts,* for respondents.

[1]Reported in 159 P. (2d) 908.

ROBINSON, J.—The plaintiffs in this action sought the reformation of a real estate contract to properly describe and identify the property offered them by the defendants and which they agreed to buy.

The character of the action and the burden upon the plaintiffs were tersely put by the trial judge in beginning his oral opinion at the close of the trial:

"This is an action brought to reform a contract for fraud. Fraud must be proved. It isn't that the Court can think there is probable fraud or there is a preponderance of evidence of fraud. That is not enough. He has got to find a finding of fraud. The Court must be satisfied by evidence clear, cogent and convincing that fraud occurred."

The property involved consisted of an old, lightly constructed house, standing on one end of a rectangular tract one hundred by one hundred fifty-three feet in size. The trial judge found that it had all the appearance of being "one property." The following excerpts from his description of it are well borne out by the evidence in the case:

"This tract of land was enclosed, plainly enclosed, partly by a hedge which gave evidence, according to its size, of having been there for a long time, and partly by a fence more or less gone to wrack. On this tract was a house. . . . It was not modern by any means, was old, but here it stood in that little tract of land which enclosed not only this one house but what might be called an orchard or some fruit trees with a little vineyard. The most intelligent man in the world, seeing that, in the absence of any further information, would just conclude that there was a humble little home where the owner had a garden, grapes and fruit. . . .

"Thereupon comes into the picture the plaintiff wife. Now, the testimony is uncontradicted in this case that the plaintiff and his wife were not experienced in buying and selling or dealing in real estate. . . .

"It is undisputed that at the time the plaintiff wife went over there to see that property there was nothing said about it being a plat or a part of a plat or lots or what it was. It was a property. She went over there and she saw a little tract of land out there in the country enclosed, containing a little house and garden, including fruit trees and grapes. . . . That is what this plaintiff woman saw,

. . . There was a little tract of land bearing every evidence in the world of having been used as one tract by some owner, with a little orchard and his vineyard. I would have concluded the same thing, in the absence of any evidence to the contrary; and when this woman went over there she had no reason in the world to know that it was any different."

There were no surrounding facts or circumstances which would lead one to suspect that the property was platted, other than that the house bore a street number. If one had known that the property was platted, he would probably have supposed, from its comparatively small area, that it consisted of two or, possibly, three lots. As a matter of fact, it consisted of a tier of six one-hundred-foot lots, of which the northern lot (lot 1) was twenty-eight feet in width and the five others, twenty-five feet. -

We think it would serve no useful purpose to detail the testimony. Both plaintiffs testified that Mrs. Young directly represented to each of them that she was offering the entire property within the enclosure, and this was corroborated by a disinterested witness. Mrs. Young denied this, and a disinterested witness on her behalf threw some doubt on the testimony given by the witness who supported the plaintiffs. The trial judge resolved the conflict in favor of the plaintiffs. We may say that the testimony given by Mrs. Young is, in our opinion, not at all convincing. We would arrive at the same conclusion the trial court did from a mere reading of the record and without resorting to the presumption in favor of the findings of the court. That Mrs. Young purported to sell the plaintiffs all the property within the enclosure, we, therefore, accept as an established fact.

We turn now to the instruments involved in the transaction. The first of these reads as follows:

"Dec. 8 - 1943.
　"Received $50.00 on house as Earnest money.
　　　　　　　"Mrs. Wm. Young
　　　　　　　　"10002 17th S. W."

The more formal earnest-money receipt was executed two days later. We quote a portion of this instrument, which was prepared by the defendants, italicizing a portion thereof which we think significant:

"EARNEST MONEY RECEIPT

"Seattle, Washington, December 10, 1943

"RECEIVED from Mr. Fred H. Meyer and Kathryn R. Meyer, his wife, hereinafter called 'purchaser,' Two Hundred Fifty and No/100 ($250.00) Dollars as earnest money in part payment of the purchase price of the following described real estate in King County, Washington:

"The property known as No. 10002 - 17th Avenue S. W., Seattle, Washington (*a more detailed and complete legal description to be supplied with the forthcoming instruments*).

Total purchase price is Thirty-five Hundred and No/100 Dollars ($3500.00), payable as follows: By the purchaser paying Five Hundred and No/100 ($500.00) Dollars down payment, Two Hundred Fifty and no/100 ($250.00) Dollars of which is hereby acknowledged, and the balance of the purchase price shall be paid in monthly installments of Forty-five and No/100 ($45.00) Dollars each, including interest at the rate of 6% per annum. First monthly payment to become due thirty days from closing of deal. [Here follows the large number of other stipulations usually found in a standard earnest money receipt, and the signatures of the contracting parties.]"

The trial court was of the opinion that, when the defendants made out this earnest-money receipt, they knew perfectly well the description of their property, but inserted the words "a more detailed and complete legal description to be supplied with the forthcoming instruments," in the hope that, when the plaintiffs came to sign the formal real estate contract, they would accept the description set out therein without question, and that is what occurred. On notice that the transaction was ready for closing, the plaintiffs went to the office of the defendants' attorney, who handed them a ten-page title insurance policy and a contract drawn in conformity with the earnest-money receipt already executed by the defendants but containing the following description:

"Lots one (1) and two (2), block five (5), Regal Heights Addition, according to plat thereof recorded in volume 20 of plats, page 94, records of said county."

This includes only the two lots upon which the house stands.

Assuming the description to be correct, the plaintiffs executed the contract on their part and paid the balance of the five hundred dollars' down payment. If they had examined the documents presented to them with minute care, they could have discovered that the descriptions therein did not include the whole of the property which they had been offered and which they had agreed to buy; for there was a plat of Regal Heights Addition on the fifth page of the title insurance policy. The appellants place much reliance upon this fact, but, we think, without sufficient reason.

It is said, in 45 Am. Jur. 634, in the article on Reformation of Instruments, § 81:

"Where one of the parties has been guilty of fraud, equity may reform the instrument notwithstanding the other party's negligence. This is true whether the fraud is actual or constructive."

And in the same article, it is said, on page 632, § 78:

"It is not essential, therefore, that one seeking the aid of a court of equity to reform a contract show that he is wholly free from fault. Mere negligence not rising to the dignity of a violation of a positive legal duty, as negligence that is a mere inadvertence, does not preclude relief. Nor will relief be denied where, in the circumstances, the negligence of the party seeking relief is excusable."

We said, a number of years ago, in *Rosenbaum v. Evans,* 63 Wash. 506, 115 Pac. 1054, an action to reform a deed:

"We cannot think that the mere failure of either party to a deed to read it operates as a bar to an action for its reformation, based upon error in the description."

Here, the error in description was, as the trial court found, the very means used to perpetrate a fraud, and we cannot think that the respondents' failure to detect it by the use of the plat on the fifth page of the title insurance

policy was, under the circumstances, negligence of a character that should bar them from the relief sought.

■ The trial court entered the following decree:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the contract made and entered into by and between the plaintiffs herein as purchasers and the defendants herein as sellers on January 6, 1944, be reformed so that the description of said real estate contained in said contract which now reads:

" 'Lots 1 and 2, Block 5, Regal Heights Addition according to plat thereof recorded in Volume 20 of plats, page 94, records of King county, State of Washington.'
read henceforth:

" 'Lots 1, 2, 3, 4, 5, and 6, Block 5, Regal Heights Addition, according to plat thereof recorded in Volume 20 of Plats, page 94, records of King county Washington.'
and that henceforth said contract shall include Lots 3, 4, 5, and 6 of said Block 5, Regal Heights Addition according to plat thereof recorded in Volume 20 of plats, page 94, records of King county, State of Washington. Exception allowed defendants."

As to this decree, it is assigned that:

"The trial judge erred in making a new contract for the contracting parties, and then decreeing a specific performance of the new contract by the appellants."

We do not read the decree as requiring specific performance of anything, unless it can be deemed that the trial judge, in effect, directed specific performance by the defendants of their obligation set out in the earnest-money receipt to include in the contract "a more detailed and complete legal description" of the property with respect to the purchase of which the two hundred and fifty dollars, therein receipted for, was paid them by the plaintiffs. Nor did the trial judge make a new contract for the parties. He merely reformed the contract actually executed to express the contract actually negotiated. When he found that the defendants offered for sale the house with the enclosed ground, and that the plaintiffs accepted the offer, the decree followed as a matter of course.

It is argued at some length that the written contract could not legally be reformed upon the faith of mere oral evidence. There is no merit in this contention. This is not a suit at law but an action in equity.

"It is a universal rule, unless some statutory provision intervenes, that a court of equity has the power to afford the remedy of reformation. The rule in courts of law is that a written instrument, in contemplation of law, contains the true agreement of the parties and furnishes better evidence of the sense of the parties than any that can be supplied by parol. 'But,' in the words of Chancellor Kent, 'equity has a broader jurisdiction and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself.' Relief is granted not for the purpose of relieving against a hard or oppressive bargain or to give either party a better one, but simply to enforce the agreement as it was made and to prevent an injustice which would ensue if this were not done." 45 Am. Jur. 584, § 3.

The decree of the trial court is affirmed.

BEALS, C. J., BLAKE, SIMPSON, and MALLERY, JJ., concur.