[No. 29748. Department Two. November 23, 1945.]

MINNIE KAUFMANN, *Respondent*, v. PAUL D. WOODARD *et al.,*
*Appellants.*[1]

*Monheimer, Schermer & Mifflin* and *Henry Clay Agnew,*
for appellants.

*C. H. Steffen* and *Andrew J. Balliet,* for respondent.

GRADY, J.—This action was brought by Minnie Kaufmann against Paul D. Woodard and wife to secure a decree of the court reforming a combined assignment of a contract to sell real estate and a deed to the property which they had executed and delivered to her, or in the alternative, relieving her from the obligation to convey a part of the property covered by the contract to the one entitled

[1] Reported in 163 P. (2d) 606.

thereto when the contract was fully performed. The case was tried before the court, findings of fact were made, and a decree was entered reforming the instrument so as to include therein additional property to that described and directing the defendants to execute and deliver to plaintiff a new one accordingly. The defendants have taken an appeal from the decree.

We find from an examination of the record the following to be the facts of the case: Prior to March 22, 1944, and for over a period of about five years, respondent had loaned money to appellants with which to finance building operations on property acquired by them, and such loans were secured by real estate mortgages. The business part of their transactions, including the preparation of necessary legal documents, was attended to by Mr. Woodard, and as a result of their satisfactory performance respondent reposed much confidence in appellants.

Appellants were the owners of lots 6, 7, and 8 of block 7, Hainsworth's Fauntleroy Grove Addition to Seattle. Respondent held mortgages on various tracts of land owned by appellants, which on March 22, 1944, aggregated the sum of twelve thousand five hundred dollars.

On September 25, 1943, appellants contracted to sell the east half of lot 7 and all of lot 8 to William E. Barnett and wife for the sum of eighty-five hundred dollars, of which eleven hundred dollars was paid in cash, and as a part of the purchase price they assumed and agreed to pay two mortgages on lot 8 held by respondent, aggregating three thousand five hundred dollars. The balance was payable in monthly installments.

On September 29, 1943, appellants gave a mortgage to respondent securing the sum of four thousand five hundred dollars covering lot 8. It does not appear whether she released the two mortgages assumed by Barnett, but if she did so she was in this position: She had increased her loan on lot 8 by one thousand dollars and held a mortgage on it in the sum of four thousand five hundred dollars, which was subsequent and subject to the contract of pur-

chase held by Barnett, and which Barnett had not expressly assumed.

About March 22, 1944, dissatisfaction had arisen as to the payments on some of the mortgages, and a refinancing arrangement was made whereby respondent agreed to release her mortgages and receive in lieu thereof assignments of outstanding real estate contracts held · by appellants as vendors, among which was the contract of sale to Barnett and wife covering the east half of lot 7 and lot 8. The total amount of money owing on the various. contracts exceeded the amount of the total mortgage indebtedness by $305.80, which amount respondent paid to appellants.

An instrument constituting a combined assignment of the Barnett contract and a deed was prepared by Mrs. Barnett, and for the description of the land involved she used the description contained in the mortgage which covered lot 8 only, although the contract being assigned covered the east half of lot 7 also. The assignment part contained no exception. There was an omission from the description. Respondent executed releases of the various mortgages.

It is at this juncture that a serious dispute between appellants and respondent appears in the testimony. The version of the transaction given by appellant Woodard and by the notary public who took the acknowledgments of the parties executing the assignment-deed and release of the mortgage covering lot 8 was to the effect that the instruments were signed by the parties in the office of the notary and in his presence, and that they acknowledged their execution before him; and that, when the assignment-deed was presented to respondent for inspection and approval, she looked it over and remarked that the description did not include the east half of lot 7, and upon inquiry as to why it was omitted appellant Woodard explained to her it had been theretofore deeded to Barnett. Mrs. Woodard did not testify at the trial.

The version of respondent was that she went to the home of appellants to close the transaction because they had declined to do business with her attorney, and the assignment-deed was delivered to her there. She, at first,

stated that as she had signed the release of the mortgage and it was acknowledged she did so at the office of the notary. On further reflection, she stated she did not go to the office of the notary on the occasion of that transaction, although she had signed other papers there prior to that event, but as he knew her signature she signed the release and appellants took it that way. She denied any conversation with appellants about the omission of the east half of lot 7 as testified to by them, and stated she did not learn of the omission until several months after the transaction was closed. The testimony of respondent being so at variance with that given by the notary when he later was a witness, counsel for respondent subjected him to a searching cross-examination and the trial judge also questioned him closely, with the result that it lost much of its force.

On January 14, 1944, appellants conveyed the east half of lot 7 to Barnett, and sometime later the latter reconveyed that property to them. It does not appear that any consideration moved to Barnett, although he had paid eleven hundred dollars on his contract at the time of its execution. The appellants assert the Barnett deed was executed after the assignment-deed of March 22, 1944. The respondent asserts in her brief it was executed March 14, 1944, and recorded June 16, 1944, and that Barnett recorded his deed from appellants March 24, 1944. The trial court found the Barnett deed was given on March 14, 1944.

The date of this deed would be important, because if the east half of lot 7 had been reconveyed to appellants before the assignment-deed was given, it would materially affect the weight to be given to the testimony of appellant Woodard to the effect that he told respondent it was not included in the assignment-deed as it had been deeded to Barnett. However, a careful search of the record fails to disclose the date of the Barnett deed, so we are unable to say whether it was given before or after the date of the assignment-deed.

On October 9, 1944, Barnett and wife assigned their contract of purchase of the east half of lot 7 and all of lot 8 to David Watson and wife for a consideration paid and prom-

ised to be paid of seven thousand four hundred dollars. The parties felt that it was necessary to secure the written consent of respondent to the assignment, and an appropriate instrument to that effect was prepared and when it was presented to her the appellants, Barnett, and Watson were all present, though it appears appellants did not remain during the entire conversation that took place. Respondent refused to execute the consent. It is significant to note that the property described was the east half of lot 7 and all of lot 8.

After executing the assignment, the attention of Watson was called to the fact that Barnett had reconveyed the east half of lot 7 to appellants, and thereupon there was stricken from the assignment the words "east half of lot 7," and Barnett and Watson initialed the change. No consideration appears to have moved to Watson for this elimination, and when testifying at the trial he stated that he expected to have the east half of lot 7 and lot 8 conveyed to him when the contract was fully performed, and in other parts of his testimony it was made to appear that he claimed he should either get the east half of lot 7 or be reimbursed therefor.

It will thus be seen that respondent is the holder of a contract by the terms of which the vendees or their assigns are entitled to receive a deed to the east half of lot 7 and lot 8 upon the payment of a purchase price set forth in the contract, although the description of the property in her assignment and deed does not include the east half of lot 7. Watson and wife, who are not parties to this suit, are the owners and holders of the contract as vendees, but their assignment is likewise deficient. It was made so by their voluntary act, but without consideration therefor. It is apparent from the testimony of Watson that he will demand from respondent when final payment is made a conveyance to the east half of lot 7 or an adjustment of the purchase price to the extent of its value.

The trial court expressed doubt as to the good faith of the transfers back and forth between appellants and the Barnetts, but we find it unnecessary to express any opinion with reference to those transactions.

■ In our approach to the factual situation as disclosed by the record, we have in mind the rule that the facts necessary to establish the right to reformation of a written instrument must be proven by evidence that is clear, cogent, and convincing.

■ Our consideration of all of the evidence leads us to the conclusion that, when respondent and appellants agreed upon their refinancing plan, respondent believed that she was taking over the Barnett contract in its entirety. We think she had the right so to believe, because as matters then stood the indebtedness against lot 8 had been increased to four thousand five hundred dollars. Her mortgage was subsequent to the Barnett contract, and from a business standpoint she would have better security by acquiring title to the property covered by that contract and the assignment of it to her.

Whether or not appellants had then received the reconveyance to the east half of lot 7 from Barnett, they owed respondent the duty to disclose to her that they desired to exclude that property from the transfer to her. We are of the opinion, as was the trial judge, that such a disclosure was not made, but the assignment-deed was prepared by appellants omitting the east half of lot 7 from it, and, as respondent had accepted other instruments prepared by appellants, she did not scrutinize it closely enough to discover the omission. This was excusable on her part because of the previous course of dealing between herself and appellants.

We think our conclusion is fortified by the fact that, when she did discover the omission some months later after a conversation with appellant Woodard, she immediately demanded a conveyance of the property omitted. Up to this time, she had been receiving payments regularly on the Barnett contract, and it is fair to infer that, if she had known all along that the east half of lot 7 was not included in the assignment-deed, she would not have suddenly demanded a conveyance of it to her or have brought this suit. It must also be borne in mind that, although the amount owing on the contract exceeded the amount of the mort-

gage on lot 8, the whole of the former was necessary to make up the total indebtedness owing respondent by appellants, and also that respondent at all times regarded the east half of lot 7 and lot 8 as one unit.

On the legal aspects of the case, we have this situation: An instrument prepared by appellants consisted of a combined warranty deed to lot 8 and an assignment of their contract to sell the east half of lot 7 and all of lot 8, but in describing the property the east half of lot 7 was omitted by them. The omission was because the east half of lot 7 had been conveyed by appellants to the Barnetts, the vendees named in the contract. Subsequent to the conveyance, the Barnetts reconveyed that property to appellants. We do not find any mutual mistake in the transaction between respondent and appellants, but we do find a mistake on the part of respondent and inequitable conduct on the part of appellants.

In order to entitle a party to a contract to a reformation thereof based upon mistake of fact there must have been either a mutual mistake of the parties, or a mistake on the part of the one entrusted with reducing the contract to writing (sometimes classed as a mutual mistake), or a mistake on the part of one party and fraud or inequitable conduct on the part of the other party. *John Hancock Mut. Life Ins. Co. v. Agnew*, 1 Wn. (2d) 165, 95 P. (2d) 386; *Chapman v. Milliken*, 136 Wash. 74, 239 Pac. 4; *Thompson v. Stack*, 21 Wn. (2d) 193, 150 P. (2d) 387; *Hazard v. Warner*, 122 Wash. 687, 211 Pac. 732, 31 A. L. R. 381; *Kelley v. Von Herberg*, 184 Wash. 165, 50 P. (2d) 23; 45 Am. Jur. 621, Reformation of Instruments, § 62. Although the foregoing cases are factually different from the instant case, they pronounce rules applicable to parties situated as were appellants and respondent with reference to each other.

It may be that appellants felt respondent was amply secured by the assignment-deed describing lot 8 only, but this did not relieve them from their duty to disclose the omission to her, as by the terms of the contract she became obligated to convey all the property covered thereby when the full purchase price was paid.

In weighing the testimony of appellant Woodard, we do not overlook the fact that he had received eleven hundred dollars on the contract, plus some monthly payments, when he gave the deed to the east half of lot 7 to Barnett, and if he held that out of his transaction with respondent he could add to the usefulness and value of the west half of lot 7 by either working out the plan with Barnett about which he testified, or by getting the east half of lot 7 reconveyed he could combine it with the west half, and have the payments made by Barnett in addition.

We have not considered the alternative relief asked by respondent in her complaint, as in order for us to do so, the Barnetts and the Watsons would have to be parties to the action.

Some questions are raised in the brief of appellants as to what may happen in regard to the east half of lot 7 when the contract is paid out if reformation is granted. We are of the opinion that respondent is entitled to be put in a position so that she can comply with the covenants of the contract of sale which she holds by conveying all of the real estate covered by it, and that it will be her duty so to do. With respect to the mutual rights and obligations as between appellants, the Barnetts, and the Watsons, they are of no concern of respondent, and these parties must work out their mutual problems in their own way.

The judgment is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.