[No. 9452–1–I.   Division One.   January 10, 1983.]

MITCHELL INTERNATIONAL ENTERPRISES, INC., *Appellant,*
v. CAREY F. DALY, ET AL, *Respondents.*

*Robert E. Ordal,* for appellant.

*Terry E. Thomson, Gay Diamond,* and *Diamond & Sylvester,* for respondents.

DURHAM, A.C.J.—Mitchell International Enterprises, Inc. (Mitchell) appeals from a judgment awarding it nominal damages against Carey F. Daly. Daly cross–appeals from a prior partial summary judgment entered in favor of Mitchell.

In February 1977, Mitchell discharged Daly from his position as comptroller with the company. It then served him with a summons and complaint alleging misappropriation of over $72,000 of company funds. In response, Daly sent Mitchell a letter offering to reimburse the company $36,000. In June 1977, Mitchell and Daly entered into a compromise agreement settling the dispute. As part of the agreement, Daly admitted the allegations in the company's complaint ("Exhibit A" attached to the agreement) and Mitchell accepted the offer outlined in Daly's letter ("Exhibit B"). The company's acceptance was conditioned upon performance of a promissory note signed by Daly ("Exhibit C"). The note was for $15,000 and represented the balance of the $36,000 Daly owed under the agreement.[1] The note required Daly to pay $600 a month. Additionally, the agreement contained the following acceleration clause:

> Daly agrees that if he should default on the note (Exhibit C) this Agreement shall be null and void and Daly will be liable for the entire amount claimed in Exhibit A less any proper offsets.

Daly paid two monthly installments as scheduled and

---

[1] Daly had reimbursed Mitchell $6,000 prior to the agreement and paid $15,000 cash at the time the agreement was signed.

made payments at varying intervals thereafter. These payments totaled $5,000 by August 1978. In July 1979, Mitchell filed suit against Daly, declaring Daly in default of the agreement and seeking recovery of the $72,000 claimed in its initial complaint.

In his answer, Daly denied that the only payments made were the $26,000, which he had reimbursed by August 1978. He claimed that he had also endorsed pension checks totaling $5,000 back to Mitchell and that furthermore Mitchell retained personal property worth $5,000 belonging to him. As an affirmative defense, Daly pleaded that "[p]laintiff has . . . received full satisfaction in the sum of $36,000.00 of the accord reached between the parties" due to the receipt of the pension checks and the retention of the personal property. He also pleaded duress as an affirmative defense. Finally, he counterclaimed for reformation. He stated that when he had signed the agreement he understood that it was a settlement of all claims for $36,000, as outlined in his letter offering to settle. He claimed that he understood that default would accelerate the debt of $36,000, not a debt of $72,000. He further stated that Mitchell knew that this understanding was false, but that the company deceptively assured him that his understanding was correct.

On February 8, 1980, the motion judge granted a motion by Mitchell for partial summary judgment. He found that

> there is no genuine issue as to any material fact except . . . whether the pension checks and personal property identified in . . . the answer should be deducted from the amount *prayed for in the complaint by Mitchell.*

(Italics ours.) The court also ordered Daly's affirmative defenses and counterclaim for reformation "stricken and dismissed with prejudice".

At trial, the jury found that Mitchell had converted Daly's personal property worth $10,562.30.[2] After dismissing the jury, the trial court modified the partial summary

---

[2]Daly had amended his answer to allege personal property was valued at $65,000. The jury found for Mitchell on the question of the pension checks.

judgment and found that the amount determined by the jury should be deducted from the balance outstanding *under the compromise agreement* as of the date of conversion, February 1, 1978. It, therefore, found the amount due at the time of the filed complaint, $23.64, to be de minimis and insufficient to require default. The court entered judgment against Daly for the $23.64. Mitchell appeals this ruling. Daly cross–appeals.

Inasmuch as the cross appeal deals with a pretrial motion, we shall discuss that first. Daly assigns error to the entry of partial summary judgment by the motion judge. He argues that it was erroneous because his pleadings and affidavits raised a substantial question of fact. He contends that his counterclaim for reformation raised a question of fact about the amount of his liability even assuming default. The counterclaim and his affidavit set forth his understanding of the agreement and assert that he relied on Mitchell to embody in the written agreement both the proposal of his letter and the discussions the parties had prior to signing the agreement.

We agree that Daly's counterclaim raises a substantial question of fact. Reformation will be granted when there is a mistake on the part of one of the parties as to the content of a document and there is fraud or inequitable conduct on the part of the other party. *Gammel v. Diethelm,* 59 Wn.2d 504, 368 P.2d 718 (1962); *Cavanaugh v. Brewington,* 3 Wn. App. 757, 477 P.2d 644 (1970). It is not determinative that the mistaken party could have noticed the discrepancy between his understanding and the written agreement by reading the documents. *See Gammel v. Diethelm, supra; Cavanaugh v. Brewington, supra.* Drawing all reasonable inferences from Daly's affidavit, a court could conclude the following: that Daly was operating under a mistake as to the terms of the contract he signed; that Mitchell knew of this and through misrepresentations encouraged the error; and that Mitchell acted inequitably in preparing a document whose terms differed from those the parties had agreed upon in earlier meetings. In sum, Daly's

reasonableness in relying on the "impressions" he gained from Mitchell as to the terms of the agreement is a factual question which cannot be resolved on summary judgment.

Summary judgment is appropriate only when the moving party has carried the burden of showing that there are no questions of material fact to be decided. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). The partial summary judgment was error in that it denied Daly the opportunity to prove facts supporting his claim for reformation.[3]

We now turn to Mitchell's appeal, which assigns error to the trial court's judgment. It argues that the trial court should not have deducted the jury award from the amount due under the compromise agreement. Mitchell claims that the trial court treated the award as a "payment" under the compromise agreement and erred in deciding this as a question of law, after the jury was dismissed.

■ We agree that the trial court should not have treated the award as payment as a matter of law. A transfer cannot constitute a payment unless there is mutual intent that it be a payment. *Thrifty Supply Co. of Seattle, Inc. v. Deverian Builders, Inc.,* 3 Wn. App. 425, 428, 475 P.2d 905 (1970). The existence of intent is a question of fact for the jury. *York v. Gaasland Co.,* 41 Wn.2d 540, 250 P.2d 967 (1952).

Mitchell next argues that, as a matter of law, the award

---

[3] Daly also argues that his complaint raised two other issues of material fact. First, he asserts that there was a question of fact as to when he was in default so as to activate the acceleration clause. This is not a question of material fact. As a matter of law, mere default did not mature the whole debt. Nor did the acceleration clause operate until Mitchell gave notice, by filing its complaint, that it was electing to accelerate. *Glassmaker v. Ricard,* 23 Wn. App. 35, 593 P.2d 179 (1979).

Second, Daly asserts that the affirmative defense of duress raises a question of fact. There are insufficient facts raised in his complaint and affidavits to withstand summary judgment on this issue. Daly merely alleges that he wanted to sign quickly and that he was depressed through fear of civil suit or criminal prosecution. Threats of litigation cannot constitute duress. *Hawkinson v. Conniff,* 53 Wn.2d 454, 334 P.2d 540 (1959). A threat to do what one has a legal right to do is not duress. *Starks v. Field,* 198 Wash. 593, 89 P.2d 513 (1939). There is no allegation of any other action on the part of Mitchell sufficient to constitute duress.

should have been treated as a setoff. Since Daly was in default, Mitchell claims that this setoff should have been applied against the amount due under the acceleration clause. It makes three arguments in support of its position.

First, Mitchell contends that converted property cannot be a "payment" as a matter of law, since Mitchell was entitled to money payment. In general, a creditor is entitled to payment in money. *Trout v. Shelikoff Packing Co.*, 179 Wash. 414, 38 P.2d 348 (1934). However, a transfer of property may constitute payment where the creditor consents or is estopped from demanding otherwise. *Trout v. Shelikoff Packing Co., supra.* Daly is therefore entitled to prove either consent or estoppel.[4] He was unable to present this theory at trial, since the partial summary judgment had dismissed his defense of payment from the case. Because of the incomplete record before us, we are unable to decide that, as a matter of law, the conversion of this property could not constitute a payment.

Second, Mitchell contends that the claim for conversion was unliquidated and cannot be used to defeat the amount of a liquidated claim. In so arguing, it relies on cases involving the treatment of unliquidated counterclaims in the computation of prejudgment interest due on a liquidated claim. Generally, an unliquidated counterclaim cannot affect the opposing party's right to interest on the full amount of its liquidated claim. *Mall Tool Co. v. Far W. Equip. Co.*, 45 Wn.2d 158, 273 P.2d 652 (1954). There is an exception to this rule, however. A counterclaim that is related to plaintiff's claim and is "of a character such that the award of damages as compensation is regarded as constituting either a reduction of the amount due the plaintiff or a payment to him" operates to reduce the amount of plaintiff's claim for purposes of computing prejudgment

---

[4]Mitchell also argues that since the note called for money payments, the court cannot rewrite the agreement to allow payment in property. There is nothing, however, to prevent a holder of a note from accepting payment in some form other than money. *Lutz v. Gatlin*, 22 Wn. App. 424, 590 P.2d 359 (1979). Daly still should have the opportunity to show consent or estoppel.

interest. *Mall Tool,* at 177; *see also Fluor Corp. v. United States ex rel. Mosher Steel Co.,* 405 F.2d 823 (9th Cir.), cert. denied, 394 U.S. 1014, 23 L. Ed. 2d 40, 89 S. Ct. 1632 (1969). Mitchell's reliance on the prejudgment interest cases is thus misplaced, because it presumes that the jury award cannot, as a matter of law, be a payment.

Third, Mitchell contends that both the trial court and Daly identified the jury award as a setoff. This, it argues, means that RCW 4.56.060,[5] which specifies the procedures followed when a setoff is proven, precludes treatment of the award as a payment. This argument incorrectly assumes that naming the award a "setoff" determines as a matter of law that it was one. It is true that the court in its judgment labeled the award as an "offset". Since, however, it treated the award as a payment preventing default, the label is not determinative. Mitchell further notes that Daly on several occasions throughout the litigation treated the award as an offset. Daly, however, is entitled to argue in the alternative. *See* CR 8(e)(2).[6] Mitchell cannot rely on a statute governing setoffs until it has been decided as a matter of law that the award was a setoff, not a payment under the agreement.

In summary, the trial court erred in treating the jury award as a "payment" as a matter of law. But we cannot say that it could not, as a matter of law, be a payment. Two issues must be decided on remand: the first, if the conver-

---

[5]RCW 4.56.060 provides:

> If the amount of the setoff, duly established, be equal to the plaintiff's debt or demand, judgment shall be rendered that the plaintiff take nothing by his action; if it be less than the plaintiff's debt or demand, the plaintiff shall have judgment for the residue only.

At one point, Mitchell appears to argue that under RCW 4.56.060 it is entitled to the residue after the jury award is deducted from whatever amount is prayed for in its complaint. This clearly goes too far. The "demand" referred to must refer to the amount awarded to plaintiff at trial, not the amount he originally sued for. The amount "demanded" in the complaint is relevant here, but only because the documents fix that amount as the agreed liability upon default of the compromise agreement.

[6]At trial, of course, he had to argue that the award was a setoff, since his affirmative defense of payment was dismissed by the partial summary judgment.

sion of personal property was a payment under the compromise agreement sufficient to preclude default, or was merely a setoff against the amount of Mitchell's claim; and second, if the agreement should be reformed. In the event that the conversion award is to be treated as a setoff, it is still necessary to find what Mitchell's claim is: the claim under the agreement as written or the claim under the agreement as reformed.

Judgment and partial summary judgment are reversed.

CALLOW and CORBETT, JJ., concur.

Reconsideration denied April 14, 1983.

Review denied by Supreme Court June 17, 1983.