# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 78622-9-I |
| | ) | |
| VIKRAM KUMAR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| SMITHA NAIR SHIVSHANKARAN, | ) | |
| | ) | FILED: September 16, 2019 |
| Respondent. | ) | |

VERELLEN, J. — Vikram Kumar appeals the trial court's CR 60(b) order partially vacating the decree of dissolution with his former spouse, Smitha Shivshankaran. The court set aside the parties' division of Kumar's 401K retirement accounts and ordered that the distribution of those assets be resolved at trial. Kumar contends the court abused its discretion. But finding no such abuse, we affirm.

## FACTS

Kumar and Shivshankaran married in 1999. During their marriage, Kumar worked and handled the family's finances, while Shivshankaran managed the household and raised their two children.

The parties separated in May 2016 and jointly petitioned for dissolution in August 2016. In April 2017, the parties negotiated via e-mail and entered several agreed final orders.[1] Only the parties' negotiations regarding the division of their retirement accounts are relevant to this appeal.

Initially, Kumar proposed that he receive two accounts, his "Fidelity 401K (6305)" and "Fidelity Brokerage Account."[2] Shivshankaran countered and requested "40 [percent] of the Fidelity retirement funds."[3] Kumar agreed to this split.[4] Shivshankaran then sent Kumar a proposed decree that awarded him the Fidelity Brokerage Account and the Fidelity 401K (6305) subject to her being awarded "40 [percent] of Fidelity 401K in [Kumar]'s name as of 5-5-2016."[5]

After reaching agreement on other issues, Kumar sent Shivshankaran a second proposed decree indicating that any changes were "highlighted in green."[6] Though neither highlighted nor mentioned, Kumar's proposal changed the account numbers assigned to the previously identified Fidelity retirement accounts and

---

[1] During negotiations, Shivshankaran was represented by counsel but Kumar was not. Clerk's Papers (CP) at 23-24. In all, they entered a dissolution decree, child support order, findings and conclusions, and parenting plan. CP at 363, 370, 385, 392.

[2] CP at 28-29.

[3] CP at 38-39.

[4] CP at 38.

[5] CP at 47-48.

[6] CP at 58-59. While the parties highlighted their changes to the proposed decree in various colors, those colors are not preserved in the record on appeal.

2

inserted an additional account that he was to be awarded.[7] Thus, according to the second proposed decree, Kumar would receive "Fidelity 401K (9766)," "Fidelity Brokerage Account (3919)," and "Fidelity BrokerageLink (6305)" while Shivshankaran would receive 40 percent of the "Fidelity 401K."[8]

Later, Kumar sent Shivshankaran a third proposed decree and again stated that he highlighted any changes in green.[9] But, without any highlighting or mention, Kumar added a number to the account from which Shivshankaran's portion of retirement funds would be taken such take the proposal stated she would receive 40 percent of "Fidelity 401K (9766)."[10] The parties then executed and filed the decree.[11]

In October 2017, during postdissolution contempt proceedings, Kumar declared that as of May 25, 2016, the Fidelity BrokerageLink (6305) account contained $160,639.37 and the Fidelity 401K (9766) account contained $7,201.24 and that Shivshankaran was aware of these amounts before agreeing to the dissolution decree.[12] Shivshankaran disagreed, stating that Kumar had only

---

[7] CP at 65-66. Kumar recalls highlighting all changes made to the proposals but acknowledges such highlights may not have been saved due to user error or an inadvertent computer error. CP at 114.

[8] CP at 65-66.

[9] CP at 72.

[10] CP at 80-81.

[11] CP at 87, 91-92, 363.

[12] CP at 414-17.

disclosed a January 2017 401K statement indicating a balance of $179,000 and that

> [i]t was agreed that I would receive 40 [percent] of the value of the 401K account. There was never a mention of multiple accounts and never a discussion of splitting some accounts to one person and some to the other. . . . The exact account number was never verified by my then lawyer and it was assumed that I would receive 40 [percent] of the account 401K [sic] statement that was provided during our discovery. . . . I only received a single statement for a single account with a single total amount and we used this as the basis for our final decree following a lengthy process of negotiation.[13]

In February 2018, Shivshankaran moved to clarify or vacate the dissolution decree as to the parties' distribution of the Fidelity retirement accounts.[14] She sought relief under CR 60(b)(1) (mistake), (b)(4)(fraud), and (b)(11)(any other reason justifying relief from the operation of the judgment).[15] The trial court denied the motion to clarify, found insufficient evidence to vacate the decree based on fraud, and requested supplemental briefing on the issue of mistake.[16] After considering the parties' additional briefing, the trial court vacated the decree "as it related to the division of the total Fidelity 401(k) accounts totaling $178,870.71 on January 31, 2017 (#6305, #9766, #3919) and Roth IRA, acct. #3321."[17]

Kumar appeals.

---

[13] CP at 472-74.

[14] CP at 1, 7-15.

[15] CP at 7-15.

[16] Report of Proceedings (RP) (May 3, 2018) at 19-21; CP at 183.

[17] CP at 525-26. The parties agreed that Kumar's Roth individual retirement account (IRA) be held in common. CP at 1, 6-7, 98.

## ANALYSIS

Kumar's multiple assignments of error can be reduced to four basic issues, including claims that the trial court (1) failed to articulate grounds for vacating the decree, (2) lacked authority to partially vacate the decree, (3) erred "by not upholding the consent decree," and (4) improperly considered extrinsic evidence to vacate the decree.[18]

Vacation of a judgment under CR 60(b) is within the trial court's discretion.[19] We will affirm the trial court's ruling if it is "based upon tenable grounds and is within the bounds of reasonableness,"[20] but will reverse it if "there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons."[21] The trial court did not abuse its discretion here.

### I. Lack of CR 60(b) Findings or Conclusions

Kumar argues that the trial court abused its discretion by omitting necessary findings of fact and conclusions of law to support its decision to vacate the decree.[22] We disagree. Though the trial court did not make formal findings or

---

[18] Appellant's Br. at 8-12.

[19] Lindgren v. Lindgren, 58 Wn. App. 558, 595, 794 P.2d 526 (1990).

[20] Id. at 595.

[21] Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)

[22] Appellant's Br. at 15. Kumar cites Scanlon v. Witrak, 110 Wn. App. 682, 686, 42 P.3d 447 (2002), for this proposition, but Scanlon does not address a purported requirement to support a CR 60(b) order with findings and conclusions.

conclusions when it ruled on Shivshankaran's CR 60(b) motion, it was not required to do so.[23]

Here, the basis of the court's ruling is clear from the record. Shivshankaran moved to vacate the decree on three grounds, including CR 60(b)(1), (b)(4), and (b)(11). The court denied her CR 60(b)(4) fraud argument.[24] The court was silent about her CR 60(b)(11) "any other reason" argument. Thus, the sole ground remaining for the court to resolve, and the only one for which it sought supplemental briefing, was mistake under CR 60(b)(1).[25]

## II. Partial Vacation of a Dissolution Decree

Kumar contends the trial court lacked authority for, and therefore abused its discretion, by vacating only the retirement distribution portion of the parties' decree.[26] He is incorrect. Ample authority exists for a trial court to vacate only a portion of a dissolution decree.[27] Vacation proceedings are equitable in nature and trial courts should exercise their authority liberally "to preserve substantial

---

[23] In re Marriage of Hammack, 114 Wn. App. 805, 811-12, 60 P.3d 663 (2003) (noting that there is no authority requiring courts to make findings and conclusions pursuant to CR 60(b)); see also CR 52(a)(5)(B) (findings and conclusions are not necessary on "decisions of motions under rules 12 or 56 or any other motion).

[24] RP (May 3, 2018) at 19-21.

[25] Id. at 20.

[26] Appellant's Br. at 15-18, 21-22; Appellant's Reply Br. at 10-12.

[27] See, e.g., Rock v. Rock, 62 Wn.2d 706, 707-10, 384 P.2d 347 (1963); In re Marriage of Powell, 84 Wn. App. 432, 438, 927 P.2d 1154 (1996); In re Marriage of Thurston, 92 Wn. App. 494, 502-04, 963 P.2d 947 (1998); In re Marriage of Akon, 160 Wn. App. 48, 62, 248 P.3d 94 (2011).

rights and do justice between the parties."[28]  Here, the court was not required to vacate the parties' entire decree when vacating distribution of their retirement funds, which was the only relief sought in Shivshankaran's CR 60(b) motion.

Of course, the overall distribution of property must be "just and equitable."[29] The trial court implicitly concluded that vacating only the distribution of the retirement accounts would be adequate to accomplish an overall just and equitable property distribution on remand.  The parties do not argue otherwise.[30]

### III.  Grounds Supporting Partial Vacation

Next, Kumar contends there was no mistake in the parties' division of the retirement funds.  He argues that the parties explicitly agreed to this distribution, Shivshankaran should have read the decree more thoroughly before signing it, and, therefore, the trial court had no grounds to partially vacate an agreed, unambiguous decree.[31]  We disagree.

A decree entered into by consent, such as the dissolution decree at issue here, is contractual in nature.[32]  "A party to a contract is entitled to reformation of the contract if either there has been a mutual mistake or one party is mistaken and

---

[28] Haller v. Wallis, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978).

[29] RCW 26.09.080.

[30] For their own reasons, both parties invite this court to remand the entirety of their property distribution for retrial.  But we decline to grant relief beyond that sought from and granted by the trial court.

[31] Appellant's Br. at 19-22.

[32] Haller, 89 Wn.2d at 544.

the other party engaged in fraud or inequitable conduct."[33] Here, the record supports either kind of mistake.

"A mutual mistake has occurred when the parties, although sharing an identical intent when they formed a written document, did not express that intent in the document."[34] Here, during their negotiations, the record shows that Kumar and Shivshankaran clearly intended to split the retirement account in an agreed fashion. Despite their intentions, both parties were unaware that 401K account 9766 had not been explicitly identified in the retirement portfolio prior to entering the final decree.[35] The evidence leaves no doubt that Shivshankaran would not have agreed to split 40 percent of account (9766) had she known the amount of funds it contained.[36] Based on the parties' misunderstandings as to scope of the retirement account to be divided, the trial court could vacate this portion of the decree for mutual mistake.

Alternatively, under the "snap up" doctrine "a court may decide not to enforce a contract where a party made a unilateral mistake in entering the contract

---

[33] Wash. Mut. Sav. Bank v. Hedreen, 125 Wn.2d 521, 525, 886 P.2d 1121 (1994).

[34] Halbert v. Forney, 88 Wn. App. 669, 674, 945 P.2d 1137 (1997); see also Bennett v. Shinoda Floral, Inc., 108 Wn.2d 386, 396, 739 P.2d 648 (1987) ("A contract is voidable on grounds of mutual mistake when both parties independently make a mistake at the time the contract is made as to a basic assumption of the contract, unless the party seeking avoidance bears the risk of the mistake.").

[35] CP at 111-12, 133-34.

[36] CP at 118, 133.

and the other party knew of the other party's mistake at the time of acceptance and unfairly exploited the mistaken party's error."[37] Spouses have a fiduciary duty to disclose all community assets and separate property prior to dissolution.[38] Accordingly, Kumar was obligated to fully disclose information about all of the Fidelity retirement accounts to Shivshankaran prior to entering the dissolution decree. By changing the account names and account numbers in successive drafts without fully disclosing the amounts contained in those accounts, Kumar unfairly exploited Shivshankaran's mistaken belief that she was receiving 40% of the largest account.

On appeal, Kumar acknowledges that he did not explicitly disclose the smaller retirement account to Shivshankaran:

> Here the account number 6305 was known to Ms. Shivshankaran from the financial statements that were filed with the court in February 2017 and is the bigger account awarded to the Petitioner. The smaller account (9766) was not explicitly mentioned in the financial statements filed with the court but was still known to Ms. Shivshankaran (definitely before the signing of the decree).[39]

Though he claims Shivshankaran was aware of the smaller retirement account prior to executing the decree, Kumar does not cite the record to support

---

[37] Lietz v. Hansen Law Offices, P.S.C., 166 Wn. App. 571, 579 n.10, 271 P.3d 899 (2012).

[38] See Seals v. Seals, 22 Wn. App. 652, 655-56, 590 P.2d 1301 (1979) ("A fiduciary duty does not cease upon contemplation of the dissolution of a marriage."); In re Marriage of Sievers, 78 Wn. App. 287, 311, 897 P.2d 388 (1995) ("We hold that a party to a property settlement agreement owes a fiduciary obligation and a duty of good faith and fair dealing to attempt to draft formal contract language that will honor that agreement.").

[39] Appellant's Br. at 19 (emphasis added).

this claim.[40] Kumar's "unfairly exploiting" Shivshankaran's lack of knowledge regarding the full scope of retirement accounts supports vacation of that portion of the decree. Thus, the trial court did not abuse its discretion in doing so.[41]

## IV. Consideration of Extrinsic Evidence

Lastly, Kumar contends the trial court improperly considered extrinsic evidence in determining whether the parties' made a mistake in their decree.[42] He is incorrect because "[a]lthough extrinsic evidence is generally not admissible to show intent contrary to the provisions of a written contract, it is admissible to show mutual mistake."[43] Because the trial court reviewed extrinsic evidence to render a decision on Shivshankaran's CR 60(b)(1) claim of mistake, the trial court did not err.

## V. Attorney Fees

Both parties request fees under RAP 18.1. Shivshankaran also seeks fees under RCW 26.09.140[44] In awarding fees on appeal, we examine "the arguable

---

[40] See Appellant's Br. at 19-22. Nor does our independent review of the record reveal any support for this proposition.

[41] Kumar argues that Shivshankaran is bound by the decree because she had an obligation to read the decree before signing it. See Appellant's Br. at 19-20. His argument is misplaced. "Any deliberate effort to draft language intended to subvert [a settlement] agreement," as alleged by Shivshankaran "is a breach of the fiduciary obligations of marriage." Sievers, 78 Wn. App. at 311.

[42] Appellant's Br. at 22-24.

[43] In re Marriage of Schweitzer, 132 Wn.2d 318, 327, 937 P.2d 1062 (1997).

[44] RCW 26.09.140 states: "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost of the other party of maintaining the appeal and attorneys' fees in addition to statutory costs."

merit of the issues on appeal and the financial resources of the respective parties."[45]

Shivshankaran has demonstrated that Kumar has greater financial ability to bear the costs of the appeal. And the issues raised by Kumar on appeal lack merit. We award Shivshankaran her reasonable fees and costs on appeal.

Accordingly, we affirm.[46]

WE CONCUR:

---

[45] In re Custody of Thompson, 34 Wn. App. 643, 648, 663 P.2d 164 (1983).

[46] As a final matter, Shivshankaran argues that Kumar's "reply brief makes numerous factual representations without a single citation to the record" and requests that we strike his reply brief as violating RAP 10.3(a)(5). See Motion to Strike at 1-2. This rule requires that the statement of the case be "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument." RAP 10.3(a)(5). Because we confine our review of Kumar's reply arguments to those articulated in its argument section, we deny Shivshankaran's motion to strike.